No. 22,945.

THE STATE OF KANSAS, *Appellee*, v. R. J. BELL, *Appellant*.

SYLLABUS BY THE COURT.

1. FALSE REPRESENTATIONS—*Obtaining Money—Separate Felonies May Be Charged in One Information.* In a prosecution for fraudulently obtaining money by false representations made by defendant to several purchasers of the capital stock of an oil company, the several offenses so committed may be charged in separate counts of a single information, and a trial and conviction may be had and sentences imposed upon such counts as the proof sustains, although each of the counts charges a separate and distinct felony.

2. SAME—*Evidence—Not Prejudicial.* Several errors assigned on the admission of testimony examined, and held not to be prejudicially erroneous.

3. SAME—*Separate Transactions—Election by the State—Judicial Discretion.* A court is vested with some discretion in the matter of requiring the prosecution to elect upon which of several transactions mentioned in the testimony it will rely for a conviction, and it is only to be done in furtherance of justice and where the evidence is such as to make it necessary. *Held,* that under the evidence herein there was no occasion for requiring an election.

4. SAME—*Instructions Not Prejudicially Erroneous.* Several of the instructions given and about which complaint was made are held to be without prejudicial error.

5. SAME—*Penalties Need Not Be Stated to Jury.* As the jury has nothing to do with assessment of punishment for offenses in this state, there is no necessity for the court to instruct a jury as to the penalties that may be imposed for offenses.

6. SAME—*Evidence Sustains the Verdict.* The evidence examined and held to be sufficient to uphold the verdict of the jury.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 6, 1920. Affirmed.

*J. E. Torrance,* and *O. W. Torrance,* both of Winfield, for the appellant.

*Richard J. Hopkins,* attorney-general, *Ellis Fink,* county attorney, and *S. M. Brewster,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: R. J. Bell was prosecuted for and convicted of obtaining money under false pretenses, and from the judgment he appeals.

The information contained fourteen counts in which he was charged with obtaining money from the parties named in the counts by false representations made to them as to the financial condition of the New Spring Creek Oil Company, the stock of which he had sold to them. It was alleged that he represented to the purchasers that the company was a prosperous and honestly managed one which was producing sufficient oil and gas to warrant the payment of dividends to its stockholders at the rate of 30 per cent per annum on its capital stock. There was testimony not only that these representations were made, but that for a time the company actually did pay dividends to stockholders at the rate of two and one-half per cent per month for a number of months. The testimony tended to show that dividends paid from the organization of the company until December, 1917, were $13,000, and that the entire production of the company during the same period was $1,643.30. About the date mentioned the company was reorganized and its affairs examined, when it was disclosed that instead of the company being able to pay the large dividends mentioned there was an indebtedness against it of over $31,000.

There is an assignment of error in the refusal of the court to strike out part of the information, but we find nothing substantial in the claim. Nor was there error in permitting the prosecution to amend the information by adding the word "designedly" to the charge that the defendant unlawfully, feloniously and fraudulently made certain representations with the intent to cheat and defraud the purchasers of capital stock. The amendment was evidently made out of abundance of caution as probably the proof could have been as fully presented under the information as it was originally drawn. Neither can it be said that there was any abuse of discretion in denying the motion for a continuance on account of the amendment.

Error is further assigned on the overruling of a motion to quash the information. The ground of the motion is that there were fourteen distinct felonies charged in fourteen separate counts, and that this was duplicity in pleading, which is not permissible, and necessarily resulted to the prejudice of the defendant. Formerly it was the practice to confine the joinder of several offenses in a pleading to misdemeanors, and in some jurisdictions that practice still prevails. The propriety of

joining felonies has been considered by this court in a number of cases and the practice has been repeatedly upheld. This is conceded by the defendant, but he calls attention to decisions in other states to the contrary and insists that under any view the joinder amounted to an abuse of discretion in the present case. The question received careful attention in *The State v. Hodges,* 45 Kan. 389, 26 Pac. 676, where seven distinct embezzlements were joined in a single information and the defendant found guilty on six of the counts. On an appeal it was held:

"Several separate and distinct felonies may be charged in separate counts of one and the same information, where all the offenses charged are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment; and the defendant may be tried upon àll the separate counts at one and the same time; all resting in the sound judicial discretion of the trial court." (Syl. ¶ 2.)

In the case of *The State v. Warner,* 60 Kan. 94, 55 Pac. 342, the defendant was charged in an information stating eleven different offenses, namely, that he received deposits from eleven different depositors knowing that the bank of which he was an officer was insolvent. He was convicted of four different offenses, and the court in meeting the contention that several distinct felonies could not be prosecuted in a single trial approved the ruling in the Hodges case, and remarked:

"The reasons for the distinction which formerly prevailed in England between prosecutions for felonies and for misdemeanors no longer exist. Where the usual punishment for the commission of a felony was death, great strictness in charging the offense, as well as in the mode of trial, was and ought to have been maintained; but in this state, and in this country generally, there is no broad distinction between the character of the punishment inflicted for misdemeanors and for felonies other than murder. . . . The mode of trial in all cases is substantially the same, and in cases like the one under consideration, where the proof must necessarily be in part the same on all of the charges, it seems entirely proper to join charges of separate transactions of similar character. The tendency of the courts in most of the states seems to be to uphold the practice and follow the rule adopted in the case of *The State v. Hodges,* supra. (10 Encycl. Pl. & Pr. 547, *et seq.*)" (p. 98.)

Other cases of like import are: *The State v. Zimmerman,* 47 Kan. 242, 27 Pac. 999; *In re White, Petitioner,* 50 Kan. 299, 32 Pac. 36; *The State v. Bussey,* 58 Kan. 679, 50 Pac. 891; *The*

*State v. Young et al.,* 70 Kan. 900, 79 Pac. 1133. Here the offenses charged were of the same general character, required the same mode of trial, the same kind of evidence and the same kind of punishment, and we think there was no abuse of judicial discretion in permitting the trial of defendant for the several offenses under a single information.

Error is assigned on the admission of the testimony of George H. Hunter, relating to statements made by defendant at a directors' meeting on December 14, 1917, with reference to the production of oil within the preceding six months, and also as to the payment of dividends, the indebtedness of the company, and its reorganization. It is said that the testimony was too remote and was incompetent to sustain the charge made against the defendant. The statements made by Bell of which testimony was given as to the production of oil and gas, and that relating to the financial condition of the company, were manifestly competent and proper. Some of the testimony challenged may have been objectionable because some of the answers were in the form of conclusions, and some of his evidence may have been immaterial, but there was a thorough cross-examination of this witness, and taking all the evidence together it shows that the rights of the defendant were not prejudiced by the testimony.

There is a further objection that a witness who had been a purchaser was allowed to state that she was a widow when she purchased the stock, but the defendant is hardly in a position to complain of this, since according to the testimony he had stated that he wished to sell to widows especially and give them the benefits of the profitable investment.

Complaint is made of the admission of certain testimony given by S. M. Brewster, who was assisting in the prosecution of the case. He testified in effect that in 1916 while he held the office of attorney-general and was acting as president of the board administering the "blue-sky" law, the defendant made application to the board for admission to sell the capital stock of the company. He undertook to identify and present the written application signed by the defendant, and it was received in evidence together with the affidavit of defendant, and a copy of the by-laws of the company, which were presented in connection with the application. In that connection another

The State v. Bell.

paper was introduced purporting to be the order of the board permitting the sale of the stock. It is contended that these papers were not properly identified and that the testimony was secondary evidence of records when the best evidence could have been produced. It may be observed first that the evidence was not offered to show a violation of the "blue-sky" law, but was offered to prove the representations made by the defendant, and his connection with the company. Another consideration is that no question was made as to the fact that the application was presented and granted. Neither is there any question that defendant signed the application and was given authority to sell the stock. Counsel for the prosecution stated that they were unable to have the records taken from Topeka, where they were kept, to the place of trial, and therefore the evidence was produced in another form. Whether better proof of the facts could have been produced we need not determine. It appears that the application was made by the defendant in person, and the witness Brewster testified, as he had a right to do, as to the oral statements made by the defendant in presenting the application. They corresponded with the written one and the same is true respecting the authority given by the board to sell. At the meeting in which this action was taken the conditions on which stock might be sold were stated orally to the defendant, and the letter of authority objected to was only confirmatory of the oral order made in the presence of the defendant. Moreover, the witnesses identified the application as the one presented by the defendant, and since it contained representations relating to the subject in controversy it was competent evidence even if it had never been filed in the department or made a matter of record. On the whole, it is clear that even if there was irregularity in the action of the court in receiving the papers in evidence it was without prejudice to the defendant, and it is only prejudicial error that affords ground for reversal.

There is a complaint concerning the testimony of Miss Walton who was secretary of the company, and custodian of such records as were kept and preserved. In testifying about the indebtedness of the company she stated that a part of it was in the form of notes signed by defendant and Calongne, and upon further inquiry she testified that she did not have the

notes in hand—that they were at home among the papers of the company. It was objected that the notes themselves were the best evidence, and of that there can be no doubt. It appears that afterwards, however, the witness produced the notes themselves and any error there may have been in the ruling was rendered harmless. Other evidence of this witness is challenged, but not pressed, in the brief and in it we find no good ground for complaint. The same may be said as to the objections made to the admission of testimony of one Fitzpatrick.

Another contention is that the court erred in overruling the defendant's motion to direct a verdict in his favor. In his behalf it is urged that the representations made by him to the effect that the company had production sufficient to pay dividends of 30 per cent of the capital stock should be interpreted to mean a production at that rate on so much of the stock as had then been sold to purchasers. The evidence does not warrant that interpretation. The ordinary meaning of the terms used in the representations, and evidently the meaning intended to be conveyed, was not that the production warranted the payments of the large dividends on a part of the capital stock sold to the particular purchaser or to a group of purchasers, but it was rather upon the capital stock issued by the company. Besides the disparity between the production and the dividends paid is so great as to leave no question for controversy. The authorized capital of the company was $100,000 and it appears that of this amount $86,000 was outstanding in July, 1917, and in December of that year stock in excess of that authorized had been issued, while, as we have seen, the production of the company up to that time was only $1,643.30. It is clear that the company was paying dividends from the proceeds of the sale of capital stock, which leads to the inference that large dividends were promised and paid to induce the purchase of stock. From the evidence it is doubtful if the condition of the company was ever such as to warrant the payment of any dividends, and there can be no doubt that the actual production was grossly misrepresented by the defendant.

Complaint is made that the court erred in overruling defendant's request to require the state to elect as to the proof

of which one of the several sales offered in evidence it relied upon for conviction. On the conclusion of the evidence for the prosecution the state announced that they did not ask for a conviction on the 2d, 4th, 5th and 7th counts, and later the court held that the evidence was not sufficient to warrant the submission of the 1st, 3d and 10th counts, and these, with those withdrawn by the state, were taken from the consideration of the jury. The defendant then moved that the state be required to elect upon which of the several sales of stock about which testimony had been given under each of the 8th, 9th, 11th, 12th and 14th counts it would rely.

The 8th count charged that Abbie Sutton was defrauded on a certain day in October, 1917. Two sales had been made to her, but in her testimony she stated that she did not remember that any representations were made to her by the defendant prior to the first sale of the stock. Her evidence tended to show that before she bought the second stock Bell made to her the representations complained of. The testimony being confined to the representations made to the sale charged in the information, there was no occasion for an election.

The 9th count charged the obtaining of money by false pretenses through a sale of two shares of stock to J. R. Cusson, in September, 1917. It came out in the testimony that he had previously bought four shares of stock but this sale was not mentioned in the information, and as he was not charged with obtaining the latter by false representations there was no reason for requiring an election upon this count.

In the 11th count it was charged that defendant obtained $1,000 from L. S. Wright by false representations and this it appears was the third purchase that Wright had made. At earlier times sales had been made to him of different amounts, but these transactions were not mentioned in the information. The testimony could only apply to the offense charged and an election was not necessary under this count.

Under the 12th count the testimony related to a single sale only, and that is true as to the 13th count.

The 14th count charged that in September, 1917, $1,000 had been fraudulently obtained from Mrs. Broadbent, who had purchased five shares of stock at two different times, each time paying $1,000 for the stock. The testimony was that she had

not met the defendant prior to the first sale and hence the representations made by him only applied to the second sale in September, the one charged in the information.

Under the testimony, therefore, we think there was no occasion to require the elections requested. The court is vested with considerable discretion in the matter of requiring elections in such cases and the order is only to be made in furtherance of justice and where the evidence is such as to require it. (*The State v. Crimmins,* 31 Kan. 376, 2 Pac. 574.)

The instructions of the court are attacked in a wholesale charge that they are erroneous. In them the court defines the offenses charged, tells the jury the proof necessary to sustain them and the rules governing the jury in weighing the evidence. The discussion of this assignment is mainly confined to the contention that the evidence is not sufficient to justify the submission of the case to the jury. Holding as we do that there is sufficient evidence, a discussion of this assignment is not required.

Particular objection is made to the following instruction:

"You are instructed that there is no evidence in this case that would warrant you in finding the defendant guilty upon the 1st, 2d, 3d, 4th, 5th, 7th, and 10th counts of the information. You may, however, if the evidence warrants, and under the laws as herein defined, find the defendant guilty upon the 6th, 8th, 9th, 11th, 12th, 13th and 14th counts. In the event that you find the defendant guilty upon any one of the last enumerated counts, and fail to make any findings as to the remaining counts thereof, such a failure would amount to a verdict of not guilty."

It is said that the last sentence of the instruction is misleading because it is open to the interpretation that the jury had no alternative but to find the defendant guilty on all of the counts or otherwise on none of them. We think the jury could not have drawn that inference from the instruction. Although somewhat abbreviated it conveys the idea that if the jury finds the defendant guilty on any of the counts and failed to make findings as to the others it would amount to an acquittal as to such other counts.

Complaint is also made that the court failed to instruct as to the degrees of the offense or the penalties therefor imposed by law. It may be said that no request was made for an elaboration of the instruction which the court gave in defining the offense. If a fuller statement as to the character of the offense

was desired a request for the same should have been prepared and presented to the court. As the jury has nothing to do with the assessment of punishment in this state there is no necessity for the court to instruct the jury as to the punishment which may be measured out for an offense. It is true that the obtaining of money or property by false pretenses is to be punished in the same manner and to the same extent as for stealing the money or property so obtained. But even if the court had been asked by defendant to instruct the jury to give consideration as to the value of the money fraudulently obtained by the defendant the request might well have been refused, as the testimony all shows beyond question that the amounts so obtained far exceeded $20, the amount which marks the distinction between grand and petit larceny.

A careful reading of the evidence, the sufficiency of which was challenged under several of the assignments of error satisfies us that it abundantly sustains the verdict of the jury, and no prejudicial error being found in the rulings of the court, the judgment is affirmed.