173 So. 612

## MATSON v. STATE.

### 7 Div. 261.

Court of Appeals of Alabama.

Feb. 16, 1937.

Rehearing Denied March 16, 1937.

Merrill, Jones & Whiteside, of Anniston, for appellant.

398

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The principal witness for the State was one Eichelberger, who admittedly was a bootlegger of prohibited liquors and had some twenty men selling the liquor for him, and who testified before the grand jury, and on the trial of this case in an effort to gain immunity from prosecution under section 4635 of the Code of 1923 (Michie's Code 1928, § 4635).

During the examination of this witness, it developed that he had a grudge against Mayor Coleman, the mayor of Anniston, Frank McCraw, a police officer of the city of Anniston, and Norman Summers, chief deputy to the sheriff of Calhoun county. He testified in this connection that he paid Matson, the defendant, and Frank McCraw for the protection he bought from a man named Curlee; that Jack Barnett and Norman Summers "was in on it." He then testified, "The $1 that was paid out of the $2 was for protection and that he would notify us when they were going to make a raid and we could get the whisky out and if we got caught he would pay the fine. Mayor Coleman was in on this $1, but Frank McCraw frisked him out of 50 cents and he, Frank McCraw, double crossed me." Further on in the cross-examination he testified, "I did not have any definite agreement with Norman Summers that he was to get a single dollar, or with Mayor Coleman either. I figured it up with Frank McCraw. I did not personally make the agreement either with Norman Summers or Mayor Coleman." The cross-examination then proceeded; the witness testified as to how he conducted his whisky business and that he had no trouble, etc., until he quit. He then testified at the end that, "I was not present when anything like that was agreed upon." What this last sentence referred to it is impossible for us to say. There was in the testimony of this witness several agreements, detailed.

At the end of this examination, the defendant moved the court to strike out all of the testimony of the witness "about Norman Summers and Frank McCraw were to get $1 and Mayor Coleman 50 cents," and assign as grounds of said motion same was hearsay testimony.

The Attorney General in his brief agrees with the contention of appellant's counsel that this testimony of the witness, Eichelberger, was hearsay, but it is insisted that under section 3258 of the Code of 1923 this cause should not be reversed for the reason that this evidence so introduced did not injuriously affect the defendant's rights and for that reason is not cause for reversal.

■ We agree with the Attorney General that the evidence relative to Mayor Coleman and Summers is hearsay, seeking to inject into the case and coupling the defendant with a conspiracy on the part of the city authorities and the sheriff's office. But as to Frank McCraw, it was not hearsay. The witness testified, "I paid Matson and Frank McCraw," and also, "I figured it up with Frank McCraw. I did not personally make the agreement with Norman Summers or Mayor Coleman." The motion went to all of the evidence regarding these three parties with no separate motion as to Summers and Coleman.

■ It is true that where a witness testifies to facts and it later develops in the examination or cross-examination that the witness has no independent knowledge of the facts testified about, but bases his statements on information received from others or from deductions of his own, such testimony is hearsay and should be excluded upon motion. Ex parte Lindsey, 204 Ala. 394, 86 So. 87.

■ But, in any event, the appellant is not in position to take advantage of this point. All of this evidence was brought out by the defendant on cross-examination and no objection or motion was seasonably made by the defendant to any of the testimony; on the contrary, presumably in answer to questions of defendant's counsel, the witness in a detailed statement covering two pages of the transcript went into and described the whole agreement entered into by him and Frank McCraw, whereby witness was to receive immunity in the illegal sale of whisky in Anniston and the only effort to raise an objection to any part of the testimony is as hereinabove set out.

■ Another reason why appellant could not avail himself of this ruling of the court is that the motion came too late. A party to a suit may not speculate upon the testimony of a witness by bringing out evidence, and then, if it does not suit him, have it excluded on motion. By a long line of decisions in this State, it is held that a motion to exclude evidence in a criminal case made at the conclusion of the examination of the witness and during the cross-examination comes too late, where no objection to the evidence was made when the evidence was brought out. Franklin v. State, 145 Ala. 669, 39 So. 979; Hamlett v. State, 19 Ala.App. 218, 96 So. 371; 6 Alabama Digest, Criminal Law, ☞696 (5).

■ State's witness, Eichelberger, after testifying that he was the proprietor of two liquor shops in Anniston, further testified that the defendant with his knowledge had a place of business in Calhoun county on December 24, 1935, on the Fort McClellan road, which designated the location, and identified a bank check payable to Curtis Matson for $119.50 as being a check given by him and delivered to one Ernest Tannt on December 24, 1935. He further testified that at the time Tannt was in his employ selling whisky; that the check was given to Tannt for the purpose of buying whisky and shortly thereafter there was delivered to him a lot of whisky, which was itemized on a ticket aggregating $119.50, and that the whisky was delivered to him by Ernest Tannt the night of the day on which the check was given, the load of whisky corresponding to the items on the ticket which was delivered with it. All of this evidence was objected to, question by question, and proper motion to exclude on the ground that the defendant was not connected in any way with the selling. Thereupon the state solicitor stated to the court that: "We will supply this knowledge before we get through." The witness then proceeding identified the items appearing on the ticket as whisky or champagne; that he had visited defendant's place of business, that he had been in his warehouse and brands of whisky corresponding to those listed on the ticket were there. Thereupon the State introduced Ernest Tannt, who himself was an acknowledged "bootlegger," and employee of Eichelberger. He also identified the place of business of defendant, its location, and that the defendant was engaged in "the whisky business." That his stock consisted

of some fifty to seventy-five cases of whisky at a time; that witness sold whisky for Eichelberger, and also bought it and hauled it, and that he hauled it from defendant's place. He then identified the check of December 24, 1935, for $119.50, that he himself filled in the amount, that it was delivered to the defendant in payment of the whisky as indicated by the bill of sale, and that he took it from the defendant's place and delivered it to Eichelberger, that he gave him the check about 3:30 or 4 o'clock in the afternoon of Christmas Eve. The check for $119.50 and the ticket describing the whisky sold aggregating $119.50, both of which were dated December 24, were then introduced in evidence and it appears that the check was indorsed Curtis Matson. The ticket or bill of sale was made out in the handwriting of Jack Barnett, the party jointly indicted with this defendant, and who under the testimony was the partner of this defendant. This evidence was denied by the defendant and he introduced a number of witnesses tending to prove that he was in Talladega at the time of the alleged transaction. But, the evidence thus connected was relevant and admissible, and the denials on the part of the defendant and his witnesses only had the effect of submitting the question to the jury, and while there are many impeaching circumstances in the testimony, the jury evidently being impressed with the adage, "When thieves fall out just men get their dues," chose to believe this evidence on the part of the State which was within their province.

■ It is seriously insisted that the ticket or bill of sale should not have been admitted in evidence, for the reason it was admittedly made out by Jack Barnett and marked paid by him. But there was evidence tending to show that Barnett was a partner of this defendant and engaged in the illegal traffic in whisky with him. That being so, the act of one within the line and scope of the business was the act of the other, therefore, the evidence was admissible.

■ The indictment charges in one count in the alternative that the defendant did buy, sell, or have in his possession illegally, give, barter, exchange, receive, deliver, or ship prohibited liquors contrary to law. It is insisted by the appellant that the State had introduced evidence of one sale of liquor made on December 24, 1935, and that, therefore, had elected to prosecute for that offense, and that other evidence tending to prove other sales and other possessions was irrelevant, illegal, and inadmissible. Where it is manifest, either by the indictment or by the evidence, that an attempt is being made to convict the defendant of two or more offenses growing out of distinct and separate transactions, the court will grant a timely motion to require the State to elect, and if they refuse to elect, the indictment will be quashed. Wooster v. State, 55 Ala. 217; Herring v. State, 16 Ala.App. 98, 75 So. 646. But where there is only one count in an indictment for violation of the prohibition law in the alternative following the form laid down in the Code as was done in this case, the State will not be held to an election until the evidence is all in. At which time it must be done by timely motion. Herring v. State, 16 Ala.App. 98, 75 So. 646; Joyner v. State, 16 Ala.App. 240, 77 So. 78.

■ In the instant case the indictment included the charge of illegal possession and any evidence tending to prove the possession of whisky in the defendant during the time covered by the indictment was proper. Treadwell v. State, 168 Ala. 96, 53 So. 290. Any evidence tending to prove several sales of intoxicating liquors by the defendant or his partner, Barnett, from the place of business located near the Military Camp in Calhoun county was relevant, as tending to prove one continuous offense and did not call for an election, either at the time of introducing evidence of the first sale or at the conclusion of the testimony.

■ All of the evidence in this case relates to and tends to prove the possession of whisky in the place of business of this defendant as located by the testimony of the State's witnesses. And although there are several charges set out in the indictment in the alternative there was no motion made for an election after the testimony was all in. Certainly there was no election on the part of the State by the introduction of testimony tending to prove the possession as charged, although that testimony also disclosed a sale which in itself might have been the subject of prosecution. Where a count charges a keeping for sale or possession, the proving of various sales is proper in substantiation of the crime charged and there is no occasion for an election. Barefield v. State, 14 Ala.App. 638, 72 So. 293.

The defendant by his requested charges 1, 2, and 3 sought to limit the State to the one sale testified to as being December 24, 1935. As we have seen in the foregoing opinion, the testimony as to the sale of whisky on December 24th was not an election on the part of the State to prosecute for that act, the indictment charged in the alternative an unlawful possession of whisky, and the jury could not be confined to a consideration of one act when there was evidence of a continuous violation by the possession of a stock of liquors from which sales were to be made continuously. The prosecution embraced any part or all of defendant's stock of liquors and hence an election was not necessary. Brandon v. State, 24 Ala.App. 289, 134 So. 890.

The trial judge properly refused the above charges.

We find no error in the record and the judgment is affirmed.

Affirmed.

### On Rehearing.

SAMFORD, Judge.

In the original opinion we held that the motion of defendant to strike out the testimony of the witness Eichelberger, "About Norman Summers and Frank McCraw were to get $1 and Mayor Coleman 50 cents," came too late. The appellant in his brief on application for rehearing insists that he made the motion as soon as he was advised that the testimony was hearsay. This contention is not borne out by the record. In the cross-examination, Eichelberger never testified that he had any agreement with Coleman or Summers, but did testify, first: "I paid Matson, Frank McCraw and the man working for Frank McCraw for the protection." And then testified, evidently in response to questions by appellant, "I did not have any definite agreement with Norman Summers that he was to get a single dollar or with Mayor Coleman either. I figured it up with Frank McCraw. I did not personally make the agreement with either Norman Summers or Mayor Coleman." This would have been the time for appellant to have made his motion in order to have it reviewed. Instead of that, he allowed the witness to continue to testify with reference to his business in selling whisky, after which he added, "I was not present when anything like that was agreed upon." What this last testimony of the witness re-

ferred to is not clear from the record. In any event, the motion under all of the decisions came too late.

Another reason why the motion cannot be made the basis of reversible error is that the motion refers to Summers, McCraw, and Coleman jointly, whereas the testimony as to McCraw is not hearsay and, therefore, would not be subject to the motion on that ground. Where a part of evidence which is objected to as a whole is admissible, it is not error to overrule a general objection. The above statement of the rule is borne out in numerous cases digested in 6 Alabama Digest, Criminal Law, ☞695 (6).

The application for rehearing is overruled.

Application overruled.