TERRITORY OF HAWAII *v.* BENJAMIN SANTIAGO, BENIDO B. MANZANO AND LARRY B. MANZANO.

No. 4036.

ARGUED FEBRUARY 6, 1958.          DECIDED FEBRUARY 20, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Upon information by the public prosecutor, appellants were charged with violation of section 11343, Revised Laws of Hawaii 1945 (R. L. H. 1955, § 288-4), in that they played a certain game of dice wherein money of the United States was won and lost. They entered a plea of not guilty and demanded a jury trial. After trial before a jury, there was a verdict of guilty as to all three appellants. The appeal to this court followed.

A witness for the prosecution, Tsugio Kushiyama, testified that he met one of the defendants, Benjamin Santiago, a man he had known on Maui some eight years previously, at the place of employment of the witness and started off "for a bite to eat." They stopped at 1022 Elsie Way in Honolulu where the witness Kushiyama was introduced by the defendant Santiago to defendants Benido Manzano and Larry Manzano. While in the room a stranger, identified

merely as one Taben, came in looking for a person named Ramon. Neither Taben nor Ramon were produced as witnesses. After a short stay Taben rose to go, saying he owed Ramon some money and would like to leave it for Ramon, whereupon he took out a stack of money. After some conversation, Taben was asked by Benny if he knew this game called cho-han. Taben indicated he did not, whereupon Benny with a paper and pencil showed him the game. Finally, Taben said he would shoot all he had, claiming the roll of money he took out was $11,000. After a search of their wallets the witness and the appellants together raised approximately $100 and they proceeded with the game which was played with dice, and Benny purported to win the whole $11,000. Taben refused to turn over the money because the witness and the defendants did not have the amount equivalent to $11,000, so Taben claimed in case the witness and the defendants had lost they would not have been able to pay; that they would have to show him $11,000 before he would turn over the money. Benny decided that since it was too late to go to the bank, they would get the money the next day; they agreed to meet the next morning, which was Friday, at about 9 o'clock. After Taben left, Benny told the witness and the defendants they would have to produce this amount of $11,000, Benny telling the witness they would have to have the money for a few hours only, just to show to Taben that they had the amount of $11,000. However, although the witness borrowed $3,000 from his sister, and other amounts were raised, they were still short of the needed $11,000, so they agreed to meet the next day, Saturday. On Saturday they still were short of the $11,000 so Benny told Taben they had all they could secure, but Taben insisted he would not give over the $11,000 until "we had showed him that exact amount," so Benny called the witness and the defendants into the room, talked it over, and said he was

going to play for Taben's $11,000 against what they had. The witness told Benny he did not wish to play because the money was not his and he wanted it back, but Benny said this was a sure thing, that he could manipulate the dice, and he need not worry, so Benny went ahead, made the play, and Taben won all they had raised.

This case follows the usual fleecing game, large numbers of which have been before our courts, where the victim is permitted to win a large sum and then required to match the amount he has won before the fleecer will pay. (*Territory* v. *Tsutsui,* 39 Haw. 287, 289; *Territory* v. *Kitabayashi et als.,* 41 Haw. 428.)

Appellants claim there were two games and (1) the prosecution should have been required to elect as to which one of the two games the Territory sought a conviction, (2) the court should have instructed the jury it must be unanimous as to the guilt of defendants as to one of the two games testified to, and (3) the court should have instructed the jury to return a verdict of not guilty.

The argument is made that the prosecution adduced evidence as to two separate and distinct games, that while it is true that in one card game several hands may be dealt, and that in one dice game dice may be manipulated by more than one, the contention is made that a gambling game lasts only until the play stops and the participants separate and go their several ways, and that this was done in the present case although the players were to meet later, only after they had raised the specified sum of money.

It is well settled by judicial precedent that when a single offense is charged, whether by indictment or information, and the proof shows more than one offense, the prosecution may be required to elect the specific offense it seeks for a conviction (*Territory* v. *Blackman,* 32 Haw. 460; 23 C. J. S., *Criminal Law,* § 1044, p. 431), "and primarily the compelling of such an election rests in the

sound discretion of the trial court." (23 C. J. S., *supra;* *State* v. *Bell,* 107 Kan. 707, 193 Pac. 373, 376.)

In *State* v. *Cline,* 179 N. C. 703, 103 S. E. 211, the statement is made:

"The evidence for the state disclosed that two acts of sexual intercourse, alleged to be rape, took place. The defendant moved that the state be required to elect upon which it would rely for conviction. The court overruled the motion. State v. Parish, 104 N. C. 679, 10 S. E. 457, is direct authority, it seems to us, sustaining the judge. The matter of election is committed to the sound discretion of the judge. The evidence of the two acts here is so mixed and dependent on each other, with its attending circumstances that it would not be practicable to confine the prosecutor to one transaction without destroying what seems to be prima facie case of guilt against the defendant."

In *State* v. *Keelen,* 103 Ore. 172, 203 Pac. 306, 308, it is said:

"Whether in any case the court should compel the prosecution to elect the transaction upon which it will rely for conviction is largely a matter of judicial discretion. The court, upon seasonable application, should compel an election when it appears that, if the application is denied, the defendant will be prejudiced or he will be prevented from properly making his defense."

However, we think that a conclusive reason for not requiring the prosecution to elect as to separate acts is that the acts here are so related as to constitute but one entire transaction or one offense; election is not required where an offense is continuous in its nature. (23 C. J. S., *Criminal Law,* § 1044, p. 432; *Bishop's New Criminal Procedure,* vol. 1, § 460, p. 289; *Rogers* v. *State,* 15 Ala. App. 483, 73 So. 994; *State* v. *Vaughan,* 93 W. Va. 419, 117 S. E. 128.)

This is well settled law. To give a few examples:

*People* v. *Jefferson,* 123 Cal. App. (2d) 219, 266 P. (2d) 564, 565, involving a prosecution for an assault with a deadly weapon, showed that the assault was committed in defendant's back yard with a butcher knife, subsequently followed by an assault with a pocket knife in her home. The court said:

"Both of the matters relied on as being separate and distinct offenses, occurred in the course of a continuous effort on the part of the officers to disarm the appellant. They were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial."

In *People* v. *Mills Sing,* 42 Cal. App. 385, 183 Pac. 865, 869, the case goes much further than the present one. In a prosecution for larceny the evidence was that on three separate days the defendant hauled away potatoes of the complainant from his farm. The court said:

"All the potatoes having been taken in pursuance of one purpose, they were, legally speaking, taken at the same time. The law is that, if the different asportations from the same owner are prompted by one design, one purpose, one impulse, they are a single act, without regard to time."

The authorities on this subject are numerous. One of them is *Matson* v. *State,* 27 Ala. App. 396, 173 So. 612, 615-616. This case involved the prosecution for illegal sale of liquor and the court stated:

"Any evidence tending to prove several sales of intoxicating liquors by the defendant * * * was relevant, as tending to prove one continuous offense and did not call for an election, either at the time of introducing evidence of the first sale or at the conclusion of the testimony."

In *Commonwealth* v. *Farrell,* 322 Mass. 606, 78 N. E. (2d) 697, 702, in a prosecution for assault, the court said:

"It is true that a defendant who has been set to the bar to face a single issue may compel an election when two distinct offences have been put in evidence, to either of which the averments of the indictment were applicable. * * * But the Commonwealth will not be required to elect where, as here, the evidence was of substantially continuous felonious assaults upon the complainant. * * * And the fact that more than one means of assault was employed * * * or that the continuity was temporarily interrupted * * * does not require a different result."

In this so-called game of cho-han, the game was not completed at the time of the separation as the participants contemplated a further meeting, allegedly to pay the bet made on February 17. This payment was postponed not once, but twice. Further, it is obvious from the testimony that this was a scheme to fleece Mr. Kushiyama. As stated before, this is the pattern of a fleecing game and the activities were part of a single offense, not only because of the scheme but a counter-scheme tying in the activities of both days, and the activities are all tied in to each other.

Affirmed.

*Oliver P. Soares* (also on the briefs) for plaintiff in error.

*Ton Seek Pai,* Assistant Public Prosecutor (also on the brief) for defendant in error.