First degree murder; sentence: life imprisonment.
This case results from the brutal, cold-blooded murder of Debra K. Dabbs immediately after she had been savagely raped and beaten. The victim was last seen alive around 11:00 P.M. on March 5, 1975, when she was being led out of the Watergate Lounge in Birmingham by four black men. Her nude, mutilated body was found early the next morning behind Tuggle School in north Birmingham. There were three bullet holes in the head, a stab wound in the chest, and some eighteen knife slashes on *Page 882 
the back and side of the body. Spermatozoa was found in the oral, anal and vaginal orifices. Expert testimony established the cause of death as being from any one of the three gunshot wounds to the head.
Willie Joe Sistrunk testified, under grant of immunity, that on the night of the crime that he, Alfred Holt, Luther Bell, and the appellant were at the Watergate Lounge. When they started to leave, Sistrunk went to the car and got in the back seat. He saw the other three leading Debra Dabbs to the car. They all got in and drove to a nearby hill. Holt stated that he was going to rape the victim. Sistrunk got out of the car and refused to have any part of the affair, according to his version of the incident. He saw Holt rape the victim and saw the appellant and Holt take turns beating her, "like a dog." He said that the appellant also raped the victim, however, he did not personally see him.
After being ravished and beaten into a state of helplessness, Debra Dabbs was thrown naked from the car. Alfred Holt then got out with a gun saying, "I gonna kill this bitch." Sistrunk interceded on the victim's behalf, but Holt threatened to kill him also, and the witness got back in the car. Holt then fired "a hail of bullets" into the head of Debra Dabbs.
Sistrunk said he next saw the appellant and Holt slashing the victim with knives. Both got back in the car and began arguing over which had actually killed the girl:
 ". . . Steven Radford told Alfred he missed that bitch. Alfred said, ahh, I shot that bitch in the head. Steven Radford said I got that bitch in the heart."
Appellant testified that he had been with Holt, Bell and Sistrunk at a local gymnasium earlier in the afternoon of the day of the crime. He saw Holt give Bell a knife and some sunglasses. Bell put them in the glove compartment of his car, which also contained a pistol. Appellant said that after drinking some wine with Bell, he left the group and went to his mother's house. The appellant, his sister and his mother testified that he was at his mother's home at the time of the killing and knew nothing about the incident.
At the end of the testimony of the third witness at trial, the defense made two oral motions: (1) that "the indictment be quashed based on systematic exclusion of black folks from the jury . . . ." because, of twenty-seven prospective jurors, the only six blacks on the venire were all peremptorily challenged[1]
by the prosecution; and, (2) that part of the testimony of an assistant pathologist, pertaining to cause of death, be excluded because the witness was not qualified to express an expert opinion.
At the end of the testimony of the fourth witness at trial, defense counsel orally moved that the case be dismissed and the indictment quashed on the ground that the defendant was denied a speedy trial. After some discussion, the motion was overruled.
Appellant is represented on appeal by different counsel than at trial.
 I
A. Systematic Exclusion
Because the victim was an eighteen-year-old white girl and her killers were black men, the charge of racial discrimination in the conduct of the trial was inevitable. We find no such discrimination. We find that appellant was not denied any of his constitutional rights (state or federal) by the prosecution striking all six blacks from the venire.
We discussed this same point of law in detail in Liptroth v.State, Ala.Cr.App., 335 So.2d 683, cert. denied, Ala.,335 So.2d 688 (1976) wherein we reached the same conclusion as we do here, based upon Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965). This case is significantly weaker than that presented in Liptroth. There, the defense (after striking the jury but before trial) presented several attorneys as witnesses, attempting to show that *Page 883 
the striking of blacks from juries was systematic in Jefferson County. In the instant case, appellant merely makes a verbal motion and offers no evidence on the question of systematic
exclusion of blacks.
Likewise, the appellant waited until after the jury was empaneled and sworn and jeopardy had attached before making the motion which he could have easily made before the trial commenced. Counsel for appellant were given every opportunity to raise this point at the proper time, but did not do so. The record shows clearly that after striking the jury, counsel for appellant announced that the defense was satisfied with the jury.
During the selection process, one of appellant's attorneys started to make some objection or statement, but was told by the trial judge to wait and do so outside the presence of the jury. When the jury was. selected, but before being sworn, the following occurred outside the presence of the jury:
 "THE COURT: Now, Mr. Tucker, do you want to make an objection?
"MR. TUCKER: No.
 "THE COURT: I thought you wanted to make an objection? You just wanted to make it in front of the jury, is that what you wanted to do?
 "MR. TUCKER: No, sir. I started to make a statement and you said wait `til later . . .
 "THE COURT: I assumed you wanted to make an objection to the State striking blacks.
"MR. TUCKER: Perhaps you could have assumed wrong.
 "THE COURT: Well, you may make a statement now, whatever statement you wish to make.
"MR. TUCKER: No."
It is clear that the appellant's motion, after the completion of the testimony of three witnesses, came too late. In any event, the motion was to quash the indictment. The composition of the petit jury has absolutely no relationship to the validity of the indictment whatsoever, and this alone would sustain the ruling of the trial court.
B. Motion to Exclude Testimony of Expert
Appellant's motion to exclude the testimony of the assistant pathologist, as to cause of death, came too late. Counsel for appellant sat through the entire testimony of witness Jay Glass and never objected to his qualifications as an expert witness. The defense questioned him extensively on voir dire and on cross-examination. The State finished its redirect examination, and the witness was excused. Trial was adjourned for the night, and it was not until the next day that counsel for appellant challenged the witness' qualifications.
A very recent decision of our Supreme Court on this point isChatom v. State (1977) Ala., 348 So.2d 838. In a concurring opinion to that plurality decision, Justice Beatty aptly stated:
 ". . . A defendant cannot speculate on what a witness will say, and when the answer is responsive but unfavorable move to have that answer excluded. Tanner v. State, 37 Ala. App. 256, 66 So.2d 827, cert. granted, 259 Ala. 306, 66 So.2d 836 (1953); Matson v. State, 27 Ala. App. 396, 173 So. 612, cert. den., 234 Ala. 74, 173 So. 617 (1937); Ala. Dig., Crim. Law, 696 (5). . . ."
The question of qualification of a person as an expert witness rests within the sound discretion of the trial judge. We find no abuse of discretion in this instance. Luckie v.State, 55 Ala. App. 642, 318 So.2d 337, cert. denied, 294 Ala. 764, 318 So.2d 341 (1975).
 II
After the fourth witness had completed his testimony, counsel for appellant moved to dismiss the case and quash the indictment on the ground that appellant was denied a speedy trial. We are at a loss as to why counsel waited until that stage of the trial to make his motion. *Page 884 
The record discloses that appellant was arrested and jailed on the indictment on May 20, 1975. The instant trial began January 26, 1976. Appellant had previously made written motion for a speedy trial on August 6, 1975, which was set for hearing, but the record is silent as to whether a hearing was ever held or a ruling rendered on the motion. No testimony was offered on the motion. From argument between opposing counsel and earlier testimony of James Brown, it appears that Brown, a vital State's witness, was serving with the Army in Germany at the earlier term of the circuit court which was the main cause for the delay until January 1976. Appellant filed for a continuance on October 13, 1975.
In Broadnax v. State, 54 Ala. App. 546, 310 So.2d 265 (1975) we set out fully the requirements necessary to properly raise the speedy trial issue and the factors to be considered pursuant to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972). We will not state again, in this opinion, each of those factors. It is sufficient to point out that length of time from arrest to trial is not the only factor to be considered. The State's reason for delay may be given consideration. Prejudice to the defendant's rights are considered also.
Where appellant's counsel files a motion for speedy trial which he allows to lay dormant without pursuing a hearing or ruling; and where he files a request for a continuance shortly after making his speedy trial motion; and where he fails to bring the speedy trial issue to the attention of the trial court until after four witnesses have testified during the trial, we would certainly say he has waived his motion. Likewise, considering the reason for the State's delay, to obtain a vital witness, we find no constitutional violation in the delay here.
 III
Appellant assigns as error the trial court's ruling on the following voir dire examination of the venire by one of appellant's counsel:
 "MR. NEWTON: Would each of you give these three people's testimony the same weight that you would give the testimony of the police officers or any other person who sits in this witness chair that you would give to any other witness and would you not be prejudiced toward them because they are relatives of this defendant?
"Mr. JOHNSON: I object to the form.
 "THE COURT: Sustained as to the form. Many things influence people's opinions. you may ask them right now, not knowing what they've testified to or anything, would they automatically disbelieve them. You may ask that.
 "MR. NEWTON: Would you ladies and gentlemen, because these people that you have been introduced to are relatives of the defendant, would you disbelieve them for the sole reason that they are relatives?
"MR. JOHNSON: I object to that.
 "THE COURT: Sustained. This is a factor which may enter into someone's judgment.
"MR. NEWTON: We except."
Title 30, § 52, Code of Alabama, states:
 "In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict." (Emphasis supplied.)
The trial court instructed counsel as to what form he would allow the question to be asked. Counsel propounded the question in different phraseology than dictated by the court, and after the State's objection was sustained a second time, the matter was abandoned. All counsel had to do was to repeat verbatim the question as styled by the judge, but he failed to do so. The extent and scope of examination of prospective jurors is a matter within the sound discretion of the trial judge, and his conduct of the examination, absent abuse of discretion, will not result in reversible error. Johnson v. State, Ala.Cr.App., *Page 885 
335 So.2d 663, cert. denied, Ala., 335 So.2d 678 (1976); Bowens v. State,54 Ala. App. 491, 309 So.2d 844, cert. denied, 293 Ala. 746,309 So.2d 850 (1974).
Our late and much esteemed Presiding Judge Cates wrote inWard v. State, 44 Ala. App. 229, 206 So.2d 897, cert. denied,281 Ala. 650, 206 So.2d 922 (1967):
 "In § 52, supra, we find two `rights' of examination: (1) as to qualifications, interest or bias affecting the trial; and (2), under the court's direction, as to any matter which might affect the verdict.
* * * * * *
 "Carefully analyzing the operation of § 52, supra, as construed by cases such as New York Times v. Sullivan, 273 Ala. 656, 144 So.2d 25, and Aaron v. State, 273 Ala. 337, 139 So.2d 309, we consider that our Supreme Court has avulsed the mandatory `shall have the right' twice used in § 52 into a mere precatory adjuration to the humane instincts of the trial judge. The question of the voir dire examination of would be jurors allowed or disallowed below is not subject to review on appeal. Rose v. Magro, 220 Ala. 120, 124 So. 296 (hn. 10). (Italics added.)"
Since the question was an indirect inquiry as to what weight, if any, the jury might give to the testimony of a relative of the defendant, it appears to be encroaching upon an area normally reserved to requested charges or to the oral charge of the trial judge. As an analogy, the court instructed the jury that the testimony of the defendant should not be arbitrarily rejected simply because he was the defendant; however, his interest in the outcome of the case could be considered in determining the weight to be given his testimony. Had counsel for the appellant attempted to examine the venire on the weight they might give to the testimony of the appellant, we doubt that a trial judge would be reversed in any court for refusing to allow such inquiry. The question asked in the instant case appears to us to fall within that area over which the trial court has considerable discretion. We find no abuse of that discretion.
There was no motion to exclude the State's evidence at the end of its case in chief, no requested charges, no exception to the court's oral charge, and no motion for a new trial. The sufficiency of the evidence is therefore not in question.Hunter v. State, Ala.Cr.App., 331 So.2d 406 (1976).
AFFIRMED.
All the Judges concur.
[1] Although peremptory challenges apply only in civil cases, the term is commonly used in reference to the struck jury method of selecting a jury in criminal cases in Alabama. *Page 1038