189 So. 781

### LASSITER v. STATE.

### 4 Div. 502.

Court of Appeals of Alabama.
May 9, 1939.

Rehearing Stricken June 6, 1939.

E. O. Baldwin, of Andalusia, for appellant.

Thos. S. Lawson, Atty. Gen., and Edw B. Crossland and John W. Vardaman, Asst. Attys. Gen., for the State.

SAMFORD, Judge.

The indictment in this case was for murder in the first degree. On the trial the defendant was convicted of murder in the second degree and given a sentence of twenty years in the penitentiary.

The testimony tends to prove that the defendant (appellant here) and the deceased were husband and wife, and had been for some fifteen years. They separated on the night of June 13, 1938; the wife leaving the domicile, at the command of the husband, going to the home of her parents, who lived in the same town; she did not return to the domicile until about 3 o'clock P. M. on July 23, 1938, at which time the fatal difficulty occurred.

There was evidence tending to prove that during the period of separation, the deceased had made serious threats against the defendant, and that bad feeling existed between the deceased and defendant, and also between the family of deceased and the defendant.

At the time of the fatal difficulty, which occurred in the home of defendant, the evidence tends to prove that the deceased was making an assault on defendant with a pistol; that defendant struggled with deceased for the pistol, and, in self-defense, he fired his own pistol at deceased, killing her.

There was much testimony in the case, not here necessary to state in detail, tending to prove the State's case as laid in the indictment, and testimony tending to establish the plea of self-defense as offered by the defendant. We have given to this testimony and the rulings of the court, as to its admission, that careful scrutiny required of us by law and by the vital importance of the case to the defendant; and, in these various rulings, we find no errors other than that hereinafter shall appear.

On the trial the defendant offered to prove, in connection with other testimony to sustain his plea of self-defense, the fact that on the night of June 13, 1938, at about 8 o'clock, prior to the homicide which occurred on July 23, 1938, he (defendant) returned to his home and found his wife in the act of adulterous intercourse with one Johnson, at which time Johnson jumped up and ran; and, at that time defendant ordered his wife to leave the house and not to return. In making his ruling the Court said: "* * * any act of adulterous relation between the deceased and some stranger is not admissible." Defendant's counsel said: "Of course, it will have to come up from time to time. There will be a number of different instances that this comes in and we will have to show it. I can't get it all in at one time." The Court then said: "As a general proposition I am ruling against you on it and there is no use trying to offer that evidence before this jury." Then followed proper objections and exceptions to detailed questions seeking to develop this testimony.

542

■ The homicide having taken place in the home of defendant, there was no duty on his part to retreat provided he was free from fault in bringing on the difficulty, this phase of the law was properly given in charge by the trial judge to the jury. If the deceased on June 13, 1938, at the time of the separation of defendant and deceased, was guilty of adulterous intercourse and was caught "red handed" by the defendant, this would constitute abandonment of her marital rights, and when she left the house, upon the demand of her husband, she had no right to return without his permission. This would fix the status of the parties at the time of the homicide as to their mutual rights with reference to the domicile, and was relevant and material to be considered by the jury in connection with the plea of self-defense interposed by the defendant. 19 C.J. 81; 30 C.J. 1101 (924).

The one and only question involved in this appeal necessary for detailed consideration is, the ruling of the Court in refusing to allow the defendant to introduce in evidence proof of the adulterous relation between deceased and a third party at the time deceased left the marital domicile, and a continuance of that relationship after she left. If the question of self-defense was out of the case, it would be quite clear that all testimony of this character would be inadmissible for the purpose of justifying the homicide, and would be equally unavailing to reduce the killing from murder to manslaughter. If the homicide had taken place at the time of the adulterous intercourse a different question would arise, but taking place at a subsequent period, it would be relevant as tending to prove the fault of the deceased in bringing on the difficulty.

■ The real question, therefore, is, would the testimony offered to be introduced by the defendant have any tendency, even though slight, to shed light on the main inquiry as to self-defense? Gafford v. State, 122 Ala. 54, 25 So. 10; Mattison v. State, 55 Ala. 224. Whatever tends to shed light on the main inquiry and does not withdraw attention from the main issue by obtruding upon the minds of the jury matters which are foreign, or of questionable pertinency is, as a general rule, admissible evidence.

In the leading case of Gafford v. State, 122 Ala. 54–62, 25 So. 10, 12, the Supreme Court, speaking through Sharpe, Judge, had this to say: "In view of the conflicting testimony as to which of the two, deceased or the defendant, was the aggressor in the unfortunate tragedy, would the offered testimony shed any light on that question? Could the jury fairly determine that question without knowledge of facts which might have exerted an influence upon, or supplied the motive to, one or the other to become the aggressor? Or did the knowledge by the defendant of the facts sought to be proven reasonably exert any influence upon the mind of defendant in interpreting deceased's threats, motive or conduct? Or, in other words, would knowledge of these facts by defendant authorize him to regard, as hostile and dangerous, threats, motives, or conduct on deceased's part which, in the absence of that knowledge, might not have justified that conclusion? In Ball v. State, 29 Tex.App. [107] 125, 14 S.W. 1012, the court, upon a much similar question, says: 'It was important to the defendant that the jury should be fully informed as to the true cause of the enmity entertained by the deceased against him and the character of that enmity. Such information would enable the jury, in determining the issue of self-defense, to view the acts of the deceased from the defendant's standpoint. Without this information the jury could not know, as the defendant did, the settled, determined, and deadly character of the deceased's hatred towards him, and the true cause of that hatred. This testimony throws light, not only upon the motive actuating the deceased in attacking the defendant, but upon the conduct of the defendant upon that occasion, and the motive which actuated him to kill the deceased. It tends to show that he had reasonable ground to apprehend that the attack made upon him was intended by the deceased to be a deadly one. It gives character to the threats, motive, and conduct of deceased towards the defendant, and also to the motive and conduct of the defendant,'—citing Russell v. State, 11 Tex.App. 288. We would not be understood as indicating any opinion that the deceased made an attack upon the defendant, or was in any wise the aggressor, but there was evidence on the part of the defendant to that effect before the jury, which it was fully as much their duty to weigh and consider as the testimony on behalf of the prosecution showing the defendant to have been the aggressor."

Following the above quotation, the learned Judge, writing the opinion, cites the case of Copeland v. State, in Horr. & T. Cas. of Self-Defense, 41; in which the defendant killed a woman with whom her husband had adulterous relations, and the question was whether such killing was in self-defense. The Court on this point says: "But it becomes highly important to investigate with care—first, the effect which this intercourse, notorious as it was, produced upon the feelings and vindictive passions of the prisoner and the deceased towards one another; and, second, the mode and manner in which these feelings and passions were brought to bear in producing the castastrophe so much deplored." After citing other authorities and making other comments, the Court, in the Gafford case, supra, adds: "We cannot avoid the conclusion, in the light of the foregoing authorities, and that portion of the evidence tending to show that deceased was the aggressor, with a deadly weapon, that the exclusion of the testimony offered by defendant as to deceased's relations with defendant's sister, deprived the jury of proof which, if admitted, might, in their opinion, have shed light upon the main inquiry in the case, and as to which the testimony before them was so hopelessly conflicting."

There being evidence tending to prove the plea of self-defense, if the deceased, as the wife of defendant, by her conduct, had been guilty of the conduct as was offered to be proven by the defendant, such facts would tend to prove a mental condition as to both parties which the jury has a right to consider as to who was free from fault in bringing on the fatal difficulty, and as to how promptly the defendant should have acted when being attacked by his wife with a pistol. Without these facts before them to illustrate the character of the threats made by deceased and in her action in going to the home of the defendant, the jury might well have arrived at the conclusion, (as they evidently did) that the defendant was at fault and was the aggressor.

With the foregoing facts to be considered by the jury, in connection with all the other evidence in the case, they may have reached the conclusion that the defendant was justified in firing the shot as he did to save his own life. Gafford v. State, supra; Kennedy v. State, 140 Ala. 1, 10, 37 So. 90; Little v. State, 23 Ala. App. 547, 129 So. 99.

We have considered the refused charges as requested by the defendant; they either do not state correct propositions of law, or they were covered by the given charges of the Court to the jury.

For the error pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.

### On Rehearing.

This cause was submitted on March 30, 1939, at which time the appellant filed his brief in support of the appeal, a copy of which was served upon the Attorney General. No brief for the appellee was filed until April 19, 1939, which is more than fifteen days after the submission of the cause.

Upon reversal of the cause appellee filed application for rehearing, and now comes the appellant and moves the court to strike the application for the reason that appellee's application was not filed in accordance with Supreme Court Rule 38, which provides: "No appellee can, as matter of right, apply for a rehearing unless brief was filed with the clerk upon the original hearing within fifteen days after submission of the cause containing a certificate that a copy of same was served within said time upon counsel for appellant. An extension of time for filing such brief by any justice upon request of counsel will not suspend this rule so as to entitle the appellee to apply for a rehearing unless a brief was filed within fifteen days as above provided. This rule shall not apply in criminal cases except when the appellant files a brief upon submission of the cause."

In Freeland v. State, 182 So. 414, the Attorney General invoked this rule as against the appellant, in which case appellant's application was filed one day beyond the time. In that case this Court said: "This motion of the Attorney General must be granted. The rules of the court are made for the orderly disposition of causes, and attorneys should familiarize themselves with them, and comply with the requirements." The rules of court should, and must, be applied to all alike.

The motion of appellant must be granted, and the application is stricken. Caraway v. State, 207 Ala. 588; Gilbert v. State, 20 Ala.App. 28; Shirey v. State, 18 Ala.App. 109; Hollander v. State, 27 Ala.App. 454.

The application for rehearing cannot, under the rules, be considered, and the motion for the appellant to strike the application is granted.