43 So.2d 399

## PALMORE v. STATE.

### 4 Div. 537.

Supreme Court of Alabama.

Dec. 22, 1949.

E. O. Baldwin, of Andalusia, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

STAKELY, Justice.

The appellant Dorsey Palmore was indicted, tried and convicted of murder in the first degree. He received the death sentence. This appeal comes to this Court under the automatic appeal act. General Acts

184

1943, p. 217 et seq., Code of 1940, Title 15, § 382(1) et seq., Pocket Part.

On Wednesday morning April 21, 1948 the body of Carlister Palmore, deceased wife of Dorsey Palmore, was found near the old road between Florala and Lockhart in Covington County. Her throat was cut to the boney structure in the back of the neck. Dorsey Palmore was arrested at the home of his aunt in Barbour County in the early part of May, 1948. He confessed to the killing but claimed that he acted in self defense.

Dorsey Palmore and his wife lived together in Panama City, Florida. On Thursday night before the body was found, Dorsey Palmore, according to his testimony, came home about 2 o'clock in the morning. Further according to his testimony he had been to a place where there was gambling and when he arrived home, he heard his wife talking to someone in the house and then saw a man run from the back door. According to the defendant when he entered the house his wife pointed a pistol at him and threatened him and he then left. Further according to the defendant when he returned home Friday morning, she was gone, taking the pistol with her. So on Saturday he called her up in Florala where she had gone.

On Friday before the body was found Carlister Palmore went to the home of her mother in Florala. Tendencies of the evidence showed that the defendant stated that if he had caught her leaving on the bus Friday, as he attempted to do, he would have taken her off the bus and cut her head off. Tendencies of the evidence further showed that he stated he was going to Florala to bring either his wife home or her head.

The defendant followed his wife to Florala on Sunday where they spent the night together. He then returned to Panama City in order, according to his testimony, to get some money to bring her back home. On Tuesday he returned to Florala. He arrived at her mother's home at about 6 P.M. and he and his wife decided to go out to get something to eat. According to the defendant after they got out on the porch, she told him to wait a minute and he looked in the door and saw her reach under the mattress and get his 32 pistol and put it in the bosom of her dress. After eating at Dan's Cafe they then proceeded by taxi to Lockhart. Not finding the person they wished to see, they started to walk back toward Florala. On a lonely stretch of the road the defendant stepped aside to relieve himself. This is the place where the defendant killed the deceased. The defendant made three statements as to what took place. He signed a written confession. He described the events to Judge Bowen Simmons, who was then Solicitor, to which Judge Simmons testified. And he described the events when he took the witness stand in his own behalf. There was no other testimony as to what occurred at the time of the killing.

There are variations in the three foregoing statements all of the details of which we shall not attempt to state. According to the written confession, the defendant turned around and saw that the deceased was reaching in her dress. So he tore the dress open and got the pistol and knocked her down with his fist and dragged her into a ditch. She was dead. So he took his knife and cut her throat three or four times and then left and sold the pistol when he got to Panama City.

In the statement made to Judge Simmons, the defendant detailed a conversation which he claimed to have had with decedent in which references were made to the events of the preceding Thursday night. According to defendant when he looked up she said, "This is a good time to get rid of you" and when she attempted to draw the pistol, he knocked her out with his fist. Finding her dead, he sat there about thirty minutes and then cut her throat.

In giving testimony in his own behalf the defendant not only stated an alleged conversation with the deceased at the time of the killing with reference to the events of the preceding Thursday night and that deceased sought to shoot him with a pistol but also that she fired two shots at him in the struggle which culminated in his cutting her throat three times. Just before he hit her "she hollered, 'Joe, come here and help me kill this negro.'" He testified that he

had noticed a man up the road. No such person was called to testify.

The pistol was not offered in evidence. There was no proof to corroborate the defendant's statement as to its sale. There was no proof that when defendant saw his wife go back in the house, get the pistol and put it in her dress, he made any protest or inquiry about the pistol. On the contrary with their arms around each other they walked from her mother's home to the cafe. There was testimony to the effect that when defendant was asked about the pistol he stated that he had the pistol but he was afraid to shoot her with the pistol for fear it would make a noise and attract attention.

■ The court charged fully on the law of self defense and was careful to point out in its oral charge that the testimony offered by the defendant tending to show illicit relations between the deceased and an unnamed man on Thursday night prior to the killing was admissible only for the purpose of being considered along with other evidence in the case in order to determine who was the aggressor or who provoked the difficulty which resulted in the killing of Carlister Palmore. Lassiter v. State, 28 Ala.App. 540, 189 So. 781; Gafford v. State, 122 Ala. 54, 25 So. 10; McNeill v. State, 102 Ala. 121, 15 So. 352, 354, 48 Am.St.Rep. 17.

■ We are urged under the authority conferred on us by the Automatic Appeal Act to set aside the verdict of the jury on the ground that it is so decidedly contrary to the great weight of the evidence as to be wrong and unjust. We are satisfied that we should not exercise this power. The jury had the witnesses, including the defendant, before it in person and under the careful instructions of the court resolved the issues of the case against the defendant. The killing took place on Tuesday night after the alleged adulterous act of the wife on the Thursday night preceding. In McNeill v. State, supra, this court said:

" * * * if a man find his wife in the act of adultery, and, provoked by the wrong done him, and moved by the passion naturally engendered, he immediately kills her, he is not guilty of murder, but of manslaughter only; but that, on the other hand, if he does not strike and kill until after there has been time for his passion to cool and for reason to reassert itself, or if he strikes and kills immediately, but is not moved thereto by the heat of passion, but by prior malice, hatred, a desire to avenge the wrong done him, or by any other motive, or upon any design whatever except such as is presently engendered by the paroxysm of rage into which he is thrown by this extreme provocation, he is guilty of murder. And this, beyond all doubt is the law. * * * "

■ In giving his testimony, Judge Simmons testified to statements made to him by the defendant. At the time the statements were made by the defendant the court reporter took down the questions of Judge Simmons and the answers thereto of the defendant and transcribed them. Only Judge Simmons, the court reporter and the defendant were present when the defendant was questioned and gave his answers. This writing was shown to be correct by Judge Simmons. It was not introduced in evidence, but Judge Simmons used it to refresh his recollection. This was a correct procedure. Gordon v. State, 252 Ala. 492, 41 So.2d 610.

As to charges 2, 16 and 19 it is sufficient to say that they were covered by the oral charge. There was no error in their refusal.

We have carefully examined the entire record and find no error therein. The judgment of the lower court must be affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON and LAWSON, JJ., concur.