392 So.2d 1248 (1980)
Rickey Lee BROWN
v.
STATE.
8 Div. 374.
Court of Criminal Appeals of Alabama.
October 7, 1980.
Rehearing Denied October 28, 1980.
*1251 Ronald A. Drummond, Scottsboro, for appellant.
Charles A. Graddick, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Rickey Lee Brown was indicted by the Jackson County grand jury for the unlawful sale of marijuana. Trial was had with the jury returning a verdict of guilty. The trial court sentenced him to ten years imprisonment. From that conviction he now appeals in forma pauperis.
Officer Freddie Strength of the Alabama Department of Public Safety Narcotic Unit testified that in June, 1979, he was instructed by Captain E. B. Taylor to assist the Jackson County district attorney in apprehending drug dealers in Jackson County. He was to establish an undercover operation and to do whatever the district attorney thought was necessary to accomplish such. On June 14, Officer Strength met Ray Sisco, an informer who had information *1252 helpful to his investigation. Mr. Sisco was introduced to him by the district attorney. Officer Strength testified that he had no prior personal knowledge of any arrangement between the State and Mr. Sisco for procurement of his services although he later learned of such at a lunch recess during the course of the trial. He stated that his understanding of the arrangement concerned the release of Mr. Sisco's wife from the State penitentiary in exchange for his assistance in apprehending drug dealers in Jackson County. Officer Strength testified that he did not know that Mr. Sisco's wife was in custody at the time of the instant incident and does not know if she was placed on probation.
Around 3:15 p. m. on June 16, Officer Strength, along with Ray Sisco, met appellant at his automobile repair shop in DeKalb County. Mr. Sisco introduced him as a man from Huntsville. They discussed the purchase of one pound of marijuana. Officer Strength stated that appellant suggested a price of $400.00 and said he would deliver it between 5:00 and 6:00 p. m. at Mr. Sisco's trailer home in Jackson County. Appellant did not appear at the designated time and around 9:15 p. m. the same evening, Officer Strength and Mr. Sisco met appellant at the trailer home of Roger Buttram wherein appellant told him he could not get any marijuana and that he was waiting on a payment for a debt owed to him so that he could buy some more. Appellant agreed to deliver the marijuana to Mr. Sisco's later that evening but did not do so.
Officer Strength testified that the following day, he met appellant and went with him to Mr. Buttram's trailer. Appellant told Officer Strength that if he wanted only one pound they could get it at Mr. Buttram's. Officer Strength testified that at the trailer, he bought one pound of marijuana from appellant for $400.00. He stated that appellant told him he was the biggest "dealer" in the area.
Around 8:55 p. m. on June 25, Officer Strength, appellant, Marty Outlaw, a friend of appellant's, and Mr. Sisco met at Mr. Sisco's trailer home in Jackson County. Therein Officer Strength, who was equipped with a wireless transmitter, had a conversation with appellant concerning the sale of twenty pounds of marijuana. The appellant stated that he could get up to six hundred pounds and continually repeated the price of $350.00 a pound. The appellant told Officer Strength that if he waited, he could get the marijuana at a less expensive price.
Officer Strength testified that the above conversation was being monitored and recorded in the back bedroom by narcotics agent James G. Ward, and ABC agent Billy White. He stated the first conversation lasted approximately twenty minutes and upon its completion appellant and Mr. Outlaw left. Around 9:30 p. m. the same evening, a second conversation occurred with the same parties being present. Afterwards, appellant and Mr. Sisco left the trailer around 10:30 p. m. and approximately one hour later returned. Appellant entered the trailer carrying a filled plastic garbage bag. After another conversation, Officer Strength stated that agents Ward and White entered the room. Appellant was then arrested. Officer Strength identified certain voices on the tape recording and the green garbage bag and its contents. He stated that he turned the garbage bag and its contents over to ABC agent Michael Kirk.
The State called agent James G. Ward for the purpose of laying the proper predicate for introduction of the tape recording into evidence. Agent Ward stated he was in the back bedroom of Mr. Sisco's trailer on June 25 monitoring and recording various conversations. He stated that he recognized, on the tape, the voices of Officer Strength and Mr. Sisco. Agent Ward testified that at the trailer he saw the appellant and about twenty pounds of marijuana. The tape recording was offered, admitted into evidence, and played to the jury after Officer Strength retook the witness stand.
Agent Michael Kirk testified to receiving certain items from Officer Strength around 2:10 a. m. on June 26. He identified the *1253 green garbage bag and its contents. Agent Kirk testified that the evidence was kept under his control and possession until it was delivered to State toxicologist Martha Odom.
State toxicologist Martha Odom testified that on June 26 she received certain evidence from Agent Kirk. After analyzing the contents of each exhibit, she found each of the twenty bags contained within the green garbage bag to contain marijuana. Ms. Odom stated she returned the evidence to Agent Kirk on December 11. The marijuana was offered and admitted into evidence.
Officer Strength was recalled and testified that on June 25 Mr. Sisco's wife was not brought to the trailer after appellant's arrest. Officer Strength stated that at the time of appellant's arrest Mr. Sisco stated that there was a car nearby containing persons armed with machine guns as "back up" for appellant in the event of a set up.
On cross-examination, Officer Strength denied offering Mr. Outlaw a syringe filled with some drug and attempting to sell him cocaine. He stated that he never told Mr. Sisco what to say when they talked to appellant.
Alabama Department of Public Safety investigator V. E. McLelland testified that he was present at Mr. Sisco's trailer after appellant's arrest. He stated that prior to such, he was nearby in a van with Agent Kirk and other law enforcement authorities. He stated that after appellant's arrest he was transported to the Scottsboro jail wherein he gave appellant his Miranda warnings. Afterwards he asked whether appellant wished to make a statement. Appellant made certain incriminating statements, the substance of which is detailed in a subsequent portion of this opinion. At the conclusion of Investigator McLelland's testimony, appellant moved to exclude the State's evidence on the ground that it had failed to prove a prima facie case. The trial court properly overruled appellant's motion. Lee v. State, Ala.Cr. App., 350 So.2d 743 (1977); § 20-2-70(a) Code of Alabama 1975.
Appellant did not testify in his own behalf but called Marty Outlaw and Ray Sisco as witnesses to dispute the testimony of Officer Strength.
Mr. Outlaw's testimony, some of which is quoted in subsequent portions of this opinion, contradicted Officer Strength's account of the June 25 incident. Mr. Outlaw asserted that appellant and he had been framed and that Ray Sisco had told them what to say, especially concerning the price for the marijuana and their "back up" support.
Ray Sisco's testimony while not contradicting Officer Strength's testimony, did conflict with that of Mr. Outlaw. Mr. Sisco testified to his meeting with the district attorney and the arrangement for the probation of his wife in exchange for his assistance.
Appellant ended the presentation of his case by calling several character witnesses, including his wife.

I.
Appellant contends that the trial court erred in overruling his demurrer to the indictment. He asserts that it did not allege with particularity and specificity the occasion, type of transaction and quantity of marijuana involved in the instant offense.
The indictment is in a form that substantially follows the language of § 20-2-70(a) Code of Alabama 1975, the statute under which the appellant was indicted. § 15-8-23 Code of Alabama 1975.
Furthermore, averments as to time and quantity are unnecessary in order to sufficiently apprise appellant of the charge against him. § 15-8-30 Code of Alabama 1975. Law v. State, Ala.Cr.App., 342 So.2d 412 (1976), cert. denied, Ala., 342 So.2d 413 (1977), cert. denied, 434 U.S. 919, 98 S.Ct. 392, 54 L.Ed.2d 276 (1977); Hare v. State, 53 Ala.App. 596, 302 So.2d 569 (1974). Consequently, we find the indictment sufficient to apprise appellant of the offense with which he is charged.

*1254 II.
Appellant contends that the trial court improperly overruled his motion to quash the indictment on the grounds that he had been denied an absolute right to a preliminary hearing under § 15-11-1 Code of Alabama 1975 and had been denied his right to a speedy trial.

A.
Appellant was arrested on June 26, 1979 and moved, on July 18, 1979 for a preliminary hearing. The trial court, on July 24, 1979, set August 10, 1979 as the time for conducting the preliminary hearing. On August 1, 1979 appellant was indicted for the instant offense.
This question has been previously decided adversely to appellant's position in Duncan v. State, Ala.Cr.App., 369 So.2d 885 (1979). We see no reason to reiterate its discussion of the question. See also: Daniels v. State, Ala.Cr.App., 335 So.2d 412 (1976).

B.
The record reveals that appellant was arrested on June 26, 1979. On July 6, 1979, he posted a $5,000.00 bond. He was indicted on August 1, 1979, and arraigned on August 21, 1979. On August 23, 1979, appellant posted a $10,000.00 bond. On October 3, 1979, the trial court set October 29, 1979 as the date of appellant's trial although trial was not held on this date. On March 25, 1980 appellant was appointed counsel, his former attorney apparently withdrawing from representation. On March 27, 1980 he was arraigned a second time and on March 31April 1, 1980 appellant was tried.
Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), sets out four factors to be considered in determining whether there has been a denial of a speedy trial: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant. There is no fixed length of time that is considered to be per se unreasonable. Andrews v. State, Ala.Cr.App., 370 So.2d 1070, cert. denied, Ala., 370 So.2d 1075 (1979).
In the instant case we find (1) the length of delay from arrest to trial date to have been nine months. From arrest to initial arraignment, approximately two months elapsed.
It appears that on October 29, 1979, when appellant's case was called for trial, he was not represented by counsel, as he apparently refused the services of his appointed counsel. Appellant was represented by counsel at his August 21 arraignment.
During a pre-trial hearing on appellant's motion, appellant testified that no attorney appeared on his behalf in October, 1979, although he was prepared for trial. On December 26, 1979, appellant filed a motion for discovery and on January 14, 1980, the trial court set February 7, 1980, as the date for hearing the motion. On March 25, 1980, the trial court appointed appellant counsel to represent him. Appellant, during this time had been confined to a federal penitentiary.
The record is unclear as to the reason for the delay from October 29, 1979, to March 31, 1980. It seems to indicate that appellant was without the services of counsel during that period of time, which, to some extent, was caused by his own actions.
As to point (3) of Barker, supra, appellant failed to assert his right to a speedy trial until such was alleged in a "Motion to Quash the Indictment" filed March 28, 1980, three days before his trial. Evidence was taken on the motion on March 31, and thereafter denied. The record contains no other motion asserting the right.
As to (4) we find no prejudice to appellant in the delay. It appears from his testimony that in October, 1979, he was serving time on another conviction in a federal penitentiary. His freedom was not therefore unnecessarily impaired.
Considering all factors collectively and with equal weight, we find no denial of appellant's right to a speedy trial.

III.
Appellant contends that the trial court erred in denying him funds with *1255 which to independently test the alleged controlled substance.
During appellant's pre-trial motion concerning the above issue, he requested an inspection and sample of the substance confiscated and, being indigent and in federal custody, the funds or a laboratory made available to perform an independent test upon it. The trial court granted appellant the right to inspect and procure a sample of the substance,[1] but denied his request for laboratory facilities or funds.
In the instant case, as in cases dealing with a defendant's request for funds to provide expert and investigative services, the denial of such funds does not deprive the defendant of any of his constitutional rights. Thigpen v. State, Ala.Cr.App., 372 So.2d 385, cert. denied, Ala., 372 So.2d 387 (1979); and cases cited therein. The trial court properly denied appellant's motion on this ground.

IV.
Appellant asserts the trial court erred in allowing the admission of testimony concerning a prior drug transaction which occurred nine days before the instant incident. He argues such represents inadmissible evidence of a separate offense or transaction. Appellant, in addition to pleading not guilty, pled the special defense of entrapment. Appellant points to certain portions of Officer Strength's and Ray Sisco's testimony as illustrative of his contention.
In pertinent part, Officer Strength's testimony is as follows (R. 41-42, 110-114):
"Q Prior to this incident on the 26th, had you had previous conversations with Mr. Brown in your role as an undercover agent?
A Yes, I had.
Q When was the first occasion you had had a conversation with him?
A June 16, 1979.
Q Where did that occur?
A DeKalb County.
Q Who was present?
A Myself, Ray Sisco, and Mr. Brown.
Q On that occasion, did you have a discussion with Mr. Brown, the defendant, as to the purchase of any controlled substance?
A Yes, I did.
Q What, if anything, did he say or did you ask?
A I was introduced to him by Ray Sisco as `A man from Huntsville I have been telling you about; his name is Freddie;' we discussed buying a pound from him, agreed on the price of $400.00 a pound; he assured Ray Sisco he would bring it to Ray Sisco's trailer where we agreed to meet; he would bring it sometime after five and not later than 6 p. m., that night.
Q This first conversation, approximately what time did it occur?
A 3:15 p. m.
Q Then on that occasion, you had a discussion with the defendant as to the purchase of one pound of marijuana?
A Yes, I did.
Q And what was the value that he requested?
A $400.00 was the agreed price.
Q Who, during that conversation, suggested the price of $400.00?
A Rickey Brown.
Q Subsequent to this occasion, did you, on that same day, have another discussion with Mr. Brown?
A Yes, I did.
Q Would you tell the Court and jury where that happened?
A That happened in DeKalb County, 9:15 p. m., outside of the trailer park or trailer of Roger Dale Buttram.
Q Who was present when this conversation occurred?
A Myself, Ray Sisco, Mr. Brown, and Mr. Buttram was there approximately two minutes.
*1256 Q All right; at that time, were further negotiations had as to the regards of controlled substances?
A Yes, sir."
. . . . .
"Q While I'm looking, I believe Mr. Drummond mentioned a conversation that happened out at Mr. Buttram's trailer?
A. Yes, sir.
Q If you would, would you tell the jury when that happened?
A On the 16th day of June.
Q Was that the first time you had met with Mr. Brown?
A No, sir.
. . . . .
Q You said you met him on June 16?
A Yes, sir.
Q And that was at Mr. Buttram's trailer?
A Yes, sir.
Q Had you, prior to meeting him there, had a conversation with him?
A Yes, sir.
Q Where did that take place?
A In the parking lot of his body shop.
Q Who was present when that conversation took place?
A Myself and Ray Sisco.
Q Was a discussion had on this occasion as to the purchase of any controlled substance; this is on the 16th.
A Yes, sir.
. . . . . .
Q What, if anything, did Mr. Brown then say about the purchase or sale of any controlled substance?
A We agreed on a price of $400.00 for a pound of marijuana.
Q With respect to that, where did you go?
A Deliver the marijuana to Ray Sisco's trailer no later than six, after five, before six.
Q This was on the same day?
A. 16th day of June.
Q When did you next see him?
A 9:15 p. m., that night.
Q Where at?
A In the yard of Buttram's trailer.
Q Who was present when that conversation took place?
A Myself, Sisco, Brown; and like I say, Mr. Buttram intervened for a short period of time.
Q Now, at that time, what, if anything, then did Mr. Brown say in relation to the agreement that you had entered into?
A He stated that he didn't have any bags at that time; he was waiting on some people to pay him some money, a $1200.00 debt; he was going up to Trenton, to pick up a load.
Q Okay; so at that time, did he or did he not have any marijuana?
A He did not.
Q Was an agreement reached as to a, you purchasing the marijuana in the future?
A Yes, sir.
Q All right, what was that agreement?
A He would deliver it later that night to Ray Sisco's trailer.
Q. Did he, in fact, deliver it?
A No, he did not.
Q Subsequent to that, when did you meet Mr. Brown?
A I did.
Q Where?
A The next day at his, on the 16th, 17th, at 11:00 in the parking lot of his body shop.
Q Who was present on this occasion?
A Myself, Mr. Brown, Mr. Sisco, Mr. Buttram, and some other guys I wasn't introduced to, and I don't know today.
Q Where, if anyplace, then did you all go?
A Left there and went to Mr., got in the vehicle of Mr. Brown's.
Q Who was driving the vehicle?
*1257 A Mr. Brown was.
Q Okay, where, if anyplace, did you go?
A Left there and was enroute to Roger Dale, well, was enroute, and Mr. Brown told Roger, said, `We'll go to your house, if they don't want but a pound, we'll go to your house.'
Q Did you, in fact, go to what is identified to you as Mr. Buttram's house?
A To his trailer, yes, sir.
Q While there, did you secure the purchase of one pound of this brown leafy substance?
A Yes, sir, I did.
Q What was the amount agreed to, how much did you pay him on that occasion?
A I paid him $400.00.
Q Who did you pay the money to?
A Mr. Brown."
The pertinent portion of Ray Sisco's testimony is as follows (R. 198-204):
"Q Mr. Drummond also questioned you about the first meeting over at Buttram's. Was there any marijuana purchased on that occasion?
Q This first meeting you talked about y'all buying marijuana from Rickey, I believe you did say you went to the body shop first?
A I think so.
Q Did y'all, subsequent to that, go to Mr. Buttram's trailer in that area the next day or maybe the next?
A We went over there, yeah.
Q Whose car did you go in?
A Rickey's.
Q Who was driving Rickey's car?
A Rickey.
Q What did you do while you were there?
. . . . .
Q I believe you testified that you went to Mr. Buttram's. What is his first name?
A Roger.
Q It's Roger Buttram, isn't it?
A I think.
Q You went over there in this man's car, this man driving, and I ask you what did you do while you were there?
A I think that is the day we bought a pound.
Q Bought a pound, didn't you?
Q While you were there, did somebody sell you or Mr. Strength some marijuana.
A Yes, sir.
. . . . .
Q Before y'all went to Roger Buttram's trailer, did Mr. Strength and Mr. Brown have a discussion in your presence?
. . . . .
Q Prior to going to Mr. Buttram's trailer, did Mr. Strength and Mr. Brown have a discussion in your presence at the body shop?
A I think so, they talked, I think.
Q Did that discussion involve the purchase of some controlled substance?
A What do you mean `controlled substance'?
Q Marijuana?
A Yeah, I think so.
Q What, if anything, or what, if you remember, was the price to be paid for the amount?
A I couldn't say.
Q Do you remember the amount to be purchased?
A A pound, I think, over there.
Q Okay, after this discussion, did y'all subsequently leave the body shop?
A Yes, sir.
Q In whose car?
A Brown's.
Q Who was driving?
A Brown.
Q Who was carrying y'all to your destination?
*1258 A Brown.
Q Subsequent to that, then did you arrive at Mr. Buttram's house?
A Yes, sir, trailer.
Q Trailer, while there, did you purchase some controlled substance or marijuana?
A A pound.
Q Did you see Mr. Strength pay someone on those premises for that marijuana?
A I seen him go get it out of the closet and bring it in there and was looking at it, me and Roger walked outside, Roger give it to Brown, and Brown, I think,"
While it is well established that evidence of other or collateral crimes is inadmissible as substantive evidence to prove the guilt of an accused of a particular crime, there are several recognized exceptions: (1) Relevancy as a part of res gestae, (2) Relevancy to prove identity of person or of crime, (3) Relevancy to prove scienter or guilty knowledge, (4) Relevancy to prove intent, (5) Relevancy to show motive, (6) Relevancy to prove system, (7) Relevancy to prove malice, (8) Relevancy to rebut special defenses, (9) Relevancy in various particular crimes. (Emphasis added). Scott v. State, Ala.Cr.App., 353 So.2d 36, cert. denied, Ala., 353 So.2d 40 (1977); Johnson v. State, Ala. Cr.App., 335 So.2d 663, cert. denied, Ala., 335 So.2d 678, cert. denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629 (1976).
By having pled the defense of entrapment, appellant placed in issue his intent, or lack thereof, to commit the crime. Evidence of collateral crimes is admissible to rebut such a defense and to illustrate, at the time of the commission of the offense, the appellant's intent. 1 Underhill Criminal Evidence § 206 (6th ed. 1973 & Supp.1977); Wharton's Criminal Law § 52 (14th ed. 1978); Annot., 61 A.L.R.3d 293 (1975). Consequently, the trial court properly admitted the above testimony.

V.
Appellant contends the tape recording of the conversation of Officer Strength, Marty Outlaw, Ray Sisco, and himself made at Mr. Sisco's trailer was erroneously admitted into evidence on the bases of improper authentication and voice identification. The recording evidences the June 25 conversations of the above parties leading up to the drug purchase made later that evening.
We note that the above objections were made after the tape recording had been offered and admitted into evidence. In addition, they are general in nature as they raise no objection more specific than that which is otherwise required for exclusion of the evidence. Saurez v. State, Ala.Cr.App., 369 So.2d 858, cert. denied, Ala., 369 So.2d 863 (1979).
Specific objections or motions are generally required before a trial court's ruling is subject to review, unless the ground of objection is so obvious that the trial court's failure to recognize and act upon such constitutes prejudicial error. Stringer v. State, Ala.Cr.App., 372 So.2d 378, cert. denied, Ala., 372 So.2d 384 (1979); Slinker v. State, Ala.Cr.App., 344 So.2d 1264 (1977); and cases cited therein.
Where only a general objection is raised or only general grounds are asserted in support of the objection, the trial court will not be put in error for overruling such unless the evidence is clearly inadmissible for any purpose and cannot be made admissible by other evidence. Ward v. State, Ala.Cr.App., 376 So.2d 1112, cert. den., Ala., 376 So.2d 1117 (1979); Stringer, supra; Thornton v. State, 55 Ala.App. 462, 316 So.2d 710 (1975); and cases cited therein.
In the instant case, the tape recording was the best evidence of the conversations which occurred at the Sisco trailer on the night in question. It sheds light on appellant's intent and rebuts his defense of entrapment. Consequently, the trial court properly overruled appellant's objection as the tape recording was relevant and material to the issues at trial.

VI.
Appellant contends that certain statements made to Alabama Department of Public Safety investigator V. E. McLelland *1259 should have been excluded by the trial court as he had, prior to making the statements, requested an attorney.
Investigator McLelland testified that he was in a van near Ray Sisco's trailer, along with ABC agent Michael Kirk and others, immediately prior to appellant's arrest. He stated he was present at the trailer after appellant's arrest. He stated appellant was taken to the jail in Scottsboro and while there advised him of his Miranda rights. Investigator McLelland stated no threats, promises, or inducements were made to appellant. Afterwards, he asked appellant whether he wished to make a statement. Investigator McLelland testified that the appellant replied that he did not understand what he meant and that no one had asked him about that before. Investigator McLelland explained the situation to appellant to which he replied, "You have got me." Further explanation was given appellant to which appellant stated that he would like to consult an attorney before making a statement. No objection was made to the prior testimony.
Investigator McLelland testified that after appellant's request was made his interrogation ceased and only questions pertaining to appellant's personal history were asked. He stated that approximately twenty to thirty minutes later while appellant was being taken to his cell, appellant made the following statements:
"... `This is stupid,' and I didn't know what he was referring to, and I said, `What is stupid?' He said, `For twenty pounds, that is what is stupid.'"
No objection was made by appellant to the above testimony. After appellant had cross-examined Investigator McLelland, he moved to exclude the above quoted statements on the previously stated ground.
It has long been the rule in Alabama that a motion to exclude evidence made at the conclusion of the direct and cross-examination of a witness comes too late where no objection to such was made when it was initially elicited. Franklin v. State, 145 Ala. 669, 39 So. 979 (1906); Howard v. State, 36 Ala.App. 87, 54 So.2d 87 (1951); and cases cited therein. See also: Milligan v. State, 208 Ala. 223, 94 So. 169 (1922); Lightner v. State, 195 Ala. 687, 71 So. 469 (1916); Henderson v. State, 36 Ala. App. 143, 53 So.2d 624 (1951); and cases cited therein. See generally: Hill v. State, 194 Ala. 11, 69 So. 941 (1915); Sharp v. State, 193 Ala. 22, 69 So. 122 (1915); Matson v. State, 27 Ala.App. 396, 173 So. 612 (1937); and cases cited therein. Consequently, we find no merit to appellant's contention.

VII.
Appellant objects to three instances wherein the trial court erroneously permitted the State to elicit testimony concerning his prior arrests and convictions and one instance wherein the State exhibited copies of judgments of convictions to the jury.

A.
During the redirect examination of defense witness Marty Outlaw the following occurred (R. 170-171):
"Q Marty, during the time that you have known Rickey Lee Brown, have you ever known the police to come to his house and make any kind of search or try to find any marijuana?
A No, sir.
Q Ever know of any investigation that involved this gentleman here other than the one that you have, that we have been testifying about here today?
A That is the only one, today."
On recross-examination, the witness was asked:
"Q Did you know about the authorities from Birmingham, coming up here?
A No, sir.
Q You didn't know about that?
A No, sir.
. . . . .
Q You stated that you didn't know, as far as you knew, there was no investigation other than this one involving Mr. Brown, no police officers up there, no search made? *1260 A None.
Q You didn't know that the Federal Government was, at that time, investigating him for dealing in interstate stolen cars?
A No, sir.
Q You did not know that?
A No, sir.
Q You didn't know he was arrested for that?
A No, sir.
Q Didn't know he was convicted of it?
MR. DRUMMOND: The District Attorney is continuing to plow through this, he said he didn't know anything about it.
MR. DUKE: That's all."
Appellant did not object to the above testimony, but moved for a mistrial stating that such injected prejudicial matter into the trial. Such questions were answered in the negative.
Appellant initially inquired into the area of whether the witness had knowledge of any investigations concerning him. As a result, the State has the right to go into the matter to clarify, explain, or rebut it. A party who has brought out evidence on a certain subject has no valid complaint as to the trial court's action in allowing his opponent or adversary to introduce evidence on the same subject. Weatherford v. State, Ala.Cr.App., 369 So.2d 863, cert. denied, Ala., 369 So.2d 873 (1979); Satterwhite v. State, Ala.Cr.App., 364 So.2d 345 (1977), reversed on other grounds, Ala., 364 So.2d 359 (1978); Henry v. State, 57 Ala. App. 383, 328 So.2d 634 (1976); Bryson v. State, 57 Ala.App. 278, 327 So.2d 916 (1975), cert. denied, 295 Ala. 393, 327 So.2d 919 (1976); McClendon v. State, 54 Ala.App. 327, 307 So.2d 723 (1975); Brock v. State, 54 Ala.App. 310, 307 So.2d 707 (1975); and cases cited therein. See generally: 5B Alabama Digest Criminal Law 396(1). We find no error in the trial court's action in admitting such evidence and overruling appellant's motion for a mistrial.

B.
Appellant's second assertion of error occurred during the cross-examination of his character witness, Sylvania police officer J. T. George. The testimony concerned Officer George's knowledge of past or present investigations of the appellant. Certain questions were predicated on whether he "had heard" of such. Appellant did not timely and specifically object to the State's inquiry on the ground asserted on appeal.
Appellant may not raise an objection to evidence for the first time on appeal which was not raised at trial. Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); Williams v. State, Ala.Cr.App., 377 So.2d 634, cert. denied, Ala., 377 So.2d 639 (1979); McLoyd v. State, Ala.Cr.App., 373 So.2d 1175, cert. denied, Ala., 373 So.2d 1185 (1979); Law, supra; and cases cited therein; 6B Alabama Digest Criminal Law 1036.1(1).

C.
The last instance of error asserted by appellant in this regard occurred during the cross-examination of his wife, Sheila Brown. We quote the pertinent portions of the record (R. 242-244):
"Q Have you known Rickey to be involved in any illegal activity?
A Yes, sir, he has spent some time in prison.
Q When?
A It's been a couple of years ago.
Q Where is he living now?
A He is in prison now.
Q What was that for?
A It was dealing in hot parts.
Q Hot cars?
A Hot parts, cars, I don't know exactly how they stated it.
Q Well, don't you think he made some money from doing that?
A Back when he was dealing in the hot parts, he did.
Q Made money in it, and he was dealing in hot parts when he was arrested on this, too, wasn't he?
A No, sir.

*1261 Q Hadn't he since then been charged with that again?
A He has been.
Q Convicted of it again?
A He has been.
Q Doesn't it leave you to believe he was making money at that time?
MR. DRUMMOND: Objection.
THE WITNESS: No, sir.
MR. DUKE: Okay, he was not making any money, I believe, was answered, you can come down.
REDIRECT EXAMINATION
BY MR. DRUMMOND:
Q All right, now, the time that Rickey Lee Brown was in the prison is actually the same sentence he is serving now, isn't it?
A He is serving a violation of parole.
Q He was out on parole?
MR. DUKE: I object unless I'm going to be able to offer a proper rebuttal.
MR. DRUMMOND: He injected it. I wanted to clear up it was one prison sentence.
THE COURT: Overruled.
THE WITNESS: Yes, it is.
MR. DRUMMOND: That's all I wanted.
RECROSS EXAMINATION
BY MR. DUKE:
Q Mrs. Brown, is it not a fact that he was sentenced the 27th day of March, 1980, to a new sentence?
MR. DRUMMOND: We object to this, if it please the Court.
THE COURT: Overruled.
CONTINUATION BY MR. DUKE:
A Yes, sir, he was.
Q That was in Birmingham?
A Yes, sir.
Q That is not the sentence that you are talking about that he got several years ago and served two years on, is it?
A No, sir.
Q Isn't it also a fact he was sentenced March 19, 1980, in the Northern District of Alabama in Birmingham?
MR. DRUMMOND: If it please the Court, that was a few days ago.
MR. DUKE: That was certification. I was reading the wrong record.
MR. DRUMMOND: If it please the Court, we move for a mistrial, this is about the fourth or fifth time he has tried to do it, exhibited it and trying to read from it, we move for a mistrial.
THE COURT: Overruled."
We note that appellant did not object to the initial questions of the State. In addition, there was no adverse ruling to his first general objection, the witness answered the objected to question in the negative, and such was propounded to rebut appellant's prior direct examination questions to the witness concerning his financial condition at the time of the instant offense. We find no error in this instance as no adverse ruling was made to preserve any error; the answer to the question was not prejudicial to appellant, and appellant initiated inquiry into the area. Van Antwerp v. State, Ala. Cr.App., 358 So.2d 782, cert. denied, Ala., 358 So.2d 791 (1978); Johnson v. State, Ala. Cr.App., 364 So.2d 1187, cert. denied, Ala., 364 So.2d 1190 (1978); authorities cited in Part VII A, supra.
As to the State's questions concerning the current sentence appellant was serving, such was offered to clarify and explain the witness' redirect examination wherein she stated that appellant was serving only one prison sentence. Furthermore, appellant's objection was general in nature and did not raise the ground he now asserts. Consequently, no error was committed by the trial court in admitting such. Van Antwerp, supra; Johnson, supra; authorities cited in Part VII A, supra.
Lastly, appellant's argument that the State improperly exhibited to the jury copies of his judgments of convictions from federal district court is a mere allegation without support in the record. Such will not serve to preserve error, if any, on appeal.

VIII.
Appellant contends that the trial court erred in allowing the State to cross-examine *1262 his witness, Ray Sisco, regarding a deal he had entered into with the State. The arrangement dealt with the release of Mr. Sisco's wife from prison in exchange for his aid and assistance in apprehending drug dealers in Jackson County.
Appellant made initial inquiry into the arrangement during his direct examination of Mr. Sisco. It is difficult to comprehend any error in allowing the State to cross-examine Mr. Sisco concerning such. Therefore, appellant's contention is without merit. See Part VII A of this opinion for controlling authorities.

IX.
Appellant contends that in several instances he was not permitted to elicit legal evidence necessary to receive a fair trial.

A.
Appellant asserts he was not allowed to discredit the testimony of Officer Strength by proof, through his witness, Marty Outlaw, that Officer Strength offered him cocaine. We quote from the record (R. 145-150):
"Q All right, Marty, were you offered any drugs during that evening by Mr. Strength here?
A No, sir.
Q Did he ever exhibit and show to you a hypodermic syringe?
A Yes, sir. I believe he did.
Q What happened with regard to the hypodermic syringe?
A He just showed it to me and stuck it back into his pocket.
Q Did he offer you the syringe to inject yourself with a drug?
MR. DUKE: We object to his leading.
THE COURT: Yes, sir, the witness has already answered those questions.
CONTINUATION BY MR. DRUMMOND:
Q Where you offered a hypodermic syringe that he showed you?
A No, sir.
. . . . .
Q Marty, at any other time other than on this evening and prior to this evening, prior to the time you were arrested, did Mr. Strength here ever offer you a hypodermic syringe?
A I don't remember.
. . . . .
Q On any of those occasions when you might have seen him, did he ever offer you a hypodermic syringe?
MR. DUKE: We object.
THE COURT: Sustain the objection.
MR. DRUMMOND: We except, we expect the evidence to show,
MR. DUKE: We object, he is making a showing before the jury.
MR. DRUMMOND: I would like an opportunity to make a showing if I could, if it please the Court.
MR. DRUMMOND: Judge, I can state my showing into the record while he's off the witness stand.
THE COURT: Okay.
MR. DRUMMOND: Judge, we would expect the evidence to show that Marty Outlaw has in the past told the defendant, Rickey Lee Brown, that Freddie L. Strength offered him a hypodermic syringe or a needle and offered cocaine and offered to let him shoot it. We would expect the evidence to show that. Beyond that, I don't know what else I could show, but I expect to show that, and I believe it would be material in this case.
THE COURT: Yes, sir, you have asked him that, if I recall, two or three times, and on each occasion, he said that he did not.
MR. DRUMMOND: All right, it's come to my information that there may be some limitation that this witness is operating under, and he may not understand the term `hypodermic syringe', so if I could ask him in a different way if he was offered a needle like a doctor uses or a shot.
THE COURT: All right. I will let you ask it one more time.

*1263 MR. DRUMMOND: If I could ask him and get this determined outside the presence of the jury.
THE COURT: All right.
. . . . .
CONTINUATION BY MR. DRUMMOND:
Q I will ask you if Freddie L. Strength here has ever offered you a needle, the kind doctors give shots with, and ever offered you any drugs or cocaine or ever offered to give you a shot of some kind of drug? I'm talking about Freddie L. Strength, the State's witness.
A He never did, he told me he could sell some cocaine, you know, get some cocaine, and he had a needle,
MR. DUKE: We object to the question, he answered the question again in the negative.
THE COURT: Yes, sir. I think that he has.
MR. DRUMMOND: I think after the jury gets back, I would be entitled to ask him about that now.
MR. DUKE: I object to the form before the jury comes back.
THE COURT: Well, he is your witness, Mr. Drummond. I will sustain the objection to that question. Bring the jury back in."
In addition, appellant attempted to offer a tape recording of Officer Strength's testimony in a prior trial to prove his contention. The trial court sustained the State's objection based on the grounds of improper predicates for impeachment purposes and for introduction into evidence.
A review of Officer Strength's cross-examination reveals that he denied offering Mr. Outlaw "a shot of some kind of drug." His testimony is consistent with the above quoted portions of Mr. Outlaw's testimony. Appellant's questions to Officer Strength do not suggest the time or place when such an offer was made. Furthermore, it appears that appellant was not aware of the contents of Officer Strength's prior testimony as evidenced by his statement to the trial court in his offer of the tape recording (R. 212):
"It's my understanding is that this tape recording is of the testimony of Freddie Strength. I have been informed it would be materially different than those things he testified to here in this proceeding." (Emphasis added).
It is difficult to perceive how appellant would impeach Officer Strength when he did not know the contents of his prior testimony. Nevertheless, it is clear that he did not lay the proper predicate during his cross-examination of Officer Strength for the introduction of the prior testimony. See: Blackwell v. State, 264 Ala. 553, 88 So.2d 347 (1956); Gamble, McElroy's Alabama Evidence § 157.01(1) (3rd ed. 1977).
Another reason for the tape's inadmissibility is that it is immaterial to any issue raised by the pleadings. Assuming arguendo, that his prior testimony was contradictory, such would be of an immaterial matter. Consequently, the probative value, if any, of the prior testimony is tenuous at best. See: Parvin v. State, 248 Ala. 704, 26 So.2d 573 (1946); Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396 (1948); Lassiter v. State, 28 Ala.App. 540, 189 So. 781 (1939); Gamble, supra, § 156.01(3), (5). We find no error in the trial court's rulings.

B.
Appellant argues that he was denied the opportunity to question Mr. Outlaw concerning whether he had been offered probation by the State in exchange for his testimony against him. The witness answered the appellant's question concerning such in the affirmative prior to the State generally objecting. An off the record discussion followed after which the State renewed its general objection. The trial court sustained the objection.
While the trial court's ruling is adverse to appellant, it is not prejudicial to his rights as: (1) the State objected after the question was answered, and (2) the State did not move to have such excluded or stricken or the jury instructed to disregard it. Consequently, the State did not remove the matter from the jury's consideration. See: *1264 Twymon v. State, Ala.Cr.App., 358 So.2d 1072 (1978). See also: Burton v. State, Ala.Cr.App., 364 So.2d 394, cert. denied, Ala., 364 So.2d 397 (1978).

C.
Lastly, appellant argues that he was improperly denied the opportunity to pursue a line of questioning with Mr. Outlaw concerning the illegal sale of stolen vehicles by Ray Sisco. We quote from the record (R. 166-167):
"Q Was there discussion about the purchase or sale of hot cars and trucks, stolen trucks and cars?
A No, sir, he said he had some, though.
Q That is what I'm talking about. Did Ray Sisco ever offer to sell any?
A Yes, sir, he said he had plenty of them.
Q Did he ever make an offer like that to the defendant?
MR. DUKE: Objection.
THE COURT: Sustain the objection.
MR. DRUMMOND: We except.
THE COURT: I don't think it would be material at this point.
MR. DRUMMOND: I believe we can connect it up, we intend to call Ray Sisco, and I will show he was acting in concert with the State of Alabama, at this time, and I believe it would be material.
THE COURT: Well, let's wait until you do put some more showing on, I sustain the objection at this time, you can recall this witness later.
. . . . .
Q Did Ray Sisco inform you that he was running or operating a stolen car and truck ring at this time?
MR. DUKE: Objection.
THE COURT: Sustain the objection."
We find no abuse of the trial court's discretion in pretermitting appellant's questions as it was immaterial at that point in the trial.

X.
Appellant contends that the trial court erroneously overruled his motion for a mistrial on the ground that a juror failed to inform the trial court during voir dire examination of his relationship with appellant's wife.
The trial court was apprised of such by the juror during the course of the trial. He stated that he did not become aware of such until he recognized Mrs. Brown's father in the courtroom audience. It appears that the juror informed the trial court of the situation at the earliest possible moment. The trial court questioned the juror as to whether his relationship with appellant's wife would influence his ability to reach a verdict to which he negatively replied.
In Bufford v. State, Ala.Cr.App., 382 So.2d 1162, cert. denied, Ala., 382 So.2d 1175 (1980), we stated:
"Although a defendant has a right to have questions answered truthfully by prospective jurors, the failure of a juror to make a proper response to a question regarding his qualifications does not automatically entitle a defendant to a new trial. The proper inquiry by this court in such cases is whether the appellant's rights were prejudiced by the juror's failure to respond properly. Beauregard v. State, Ala.Cr.App., 372 So.2d 37 (1979), cert. denied, Ala., 372 So.2d 44, and cases cited therein. In Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), our supreme court stated:
`We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. This appears to be the general rule throughout the country [see Annotations, 38 A.L.R.2d 624, and 63 A.L.R.2d 1061]....'
The supreme court in that case likewise held that the trial court's application of the probable prejudice test is subject to review only for abuse of discretion."
*1265 No abuse of the trial court's discretion occurred in denying appellant's motion for a mistrial as we find no prejudice to his substantial rights.

XI.
Appellant contends that in two instances the trial court erred in its oral charge to the jury and that it erred in refusing certain written requested charges.

A.
Appellant specifically challenges the trial court's charge regarding evidence of prior crimes and offenses to illustrate his intent and rebut his defense of entrapment. We have previously held such evidence legal and admissible in Part IV, supra, of this opinion. Consequently, we find no error in the trial court's oral charge concerning such.

B.
Appellant asserts that the trial court should have charged the jury on misdemeanor possession as a lesser included offense of the felony offense charged in the indictment. Appellant submitted no written requested charge on such.
The trial court is not required to charge the jury on a lesser included offense when the evidence adduced at trial points either to the commission of the offense charged in the indictment or to the accused's innocence. Chavers v. State, Ala., 361 So.2d 1106 (1978); Cooper v. State, Ala. Cr.App., 364 So.2d 382, cert. denied, Ala., 364 So.2d 388 (1978); Holt v. State, Ala.Cr. App., 343 So.2d 582 (1977); Harvest v. State, Ala.Cr.App., 342 So.2d 1369 (1977); and cases cited therein. See also; Lee, supra, (holding that the burden of proving misdemeanor possession is for the defendant as it is a defensive matter under an indictment charging a felony offense under now § 20-2-70(a) Code of Alabama 1975).
The evidence is clear that the marijuana was not for personal use, but rather for sale. Under § 20-2-70(a), supra, such is a felony. Consequently, the trial court's omission of a lesser included offense instruction was proper.

C.
Appellant submitted twenty-nine written requested charges, nineteen of which were refused. After a careful review of those refused, we find no error in their refusal as they were either substantially covered by either the trial court's oral charge or one of appellant's given requested charges, misleading, argumentative, or not supported by the evidence.

XII.
Appellant contends that his sentence of ten years imprisonment was so severe as to constitute cruel and unusual punishment prohibited by both the United States and Alabama Constitutions.
Under § 20-2-70(a), Code of Alabama 1975, a person convicted of felony possession, sale, etc., of a controlled substance (Marijuana is included under such. See: § 20-2-23(3) Code of Alabama 1975) may be imprisoned for not less than two years but no more than fifteen years with the jury, in its discretion, assessing a fine up to $25,000.00. Section 15-18-20 Code of Ala.1975, confers upon the trial court the authority to impose punishment unless such is expressly reserved to the jury. When punishment is imposed within the limits defined by the punishing statute, we have no jurisdiction to review such. Jenkins v. State, Ala.Cr. App., 367 So.2d 587 (1978), cert. denied, Ala., 367 So.2d 590 (1979); Barnett v. State, Ala.Cr.App., 348 So.2d 512 (1977); Cabble v. State, Ala.Cr.App., 347 So.2d 546, cert. denied, Ala., 347 So.2d 551 (1977); Nesbitt v. State, Ala.Cr.App., 343 So.2d 1240, cert. denied, Ala., 343 So.2d 1243 (1977); Carlton v. State, Ala.Cr.App., 342 So.2d 1382 (1977); Grace v. State, 57 Ala.App. 586, 329 So.2d 643 (1976); and cases cited therein.
We have carefully examined the record and find same to be free of error. The judgment is therefore
AFFIRMED.
*1266 HARRIS, P. J., and DeCARLO and BOOKOUT, JJ., concur.
BOWEN, J., dissents with opinion.
BOWEN, Judge, dissenting.
I dissent from part II(A) of the majority opinion. I maintain my position that the defendant has an "absolute right" to a preliminary hearing under Alabama Code 1975, Section 15-11-1. See my dissent in Duncan v. State, 369 So.2d 885, 888 (Ala.Cr.App. 1979).
NOTES
[1] Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973).